MITCHELL v. POWELL.

4-4741

Opinion delivered October 18, 1937.

*Bush & Bush* and *Gaughan, Sifford, Godwin & Gaughan,* for appellants.

*E. F. McFaddin,* for appellees.

McHANEY, J. Appellant, Oma Mitchell, is the wife of W. R. Mitchell. Appellant, Boswell, is the owner of a mineral deed and royalty contract from W. R. Mitchell dated June 13, 1936, to a portion of the land in controversy, and he, Boswell, conveyed a portion of his interest to H. C. Siemson, October 2, 1936. Appellant Bush was the owner of a royalty interest in said land by deed from W. R. Mitchell, dated October 8, 1936, but which he conveyed to appellant J. B. Warmack October 13, 1936. Appellees, Corinne M. Powell and Mildred M. Warmack, are the sisters of said W. R. Mitchell, and these three are all the children and heirs at law of appellee, W. T. Mitchell, a widower.

This action was begun on October 23, 1936, by the People's Bank of Waldo against W. R. Mitchell to foreclose a mortgage on the lands in controversy, given to secure the note of said W. R. Mitchell in the sum of $726.22, in which a number of persons holding oil and gas interests, mineral deeds or royalty interests were made parties, as were, also, said Mitchell's two sisters, Mrs. Powell and Mrs. Warmack. No defense was offered to the plaintiff's suit, but on December 7, 1936, W. T. Mitchell, the father and common source of all titles, intervened, claiming to be the beneficial owner of the land in controversy, and that he and his wife, now deceased, conveyed same to his said son on December 27, 1933, for the purpose of refinancing the indebtedness against it, and that said son was not to be the owner of the fee, but was to be a trustee for him. This conveyance was made

by W. T. Mitchell to his son under the following conditions, as alleged in the intervention, and as disclosed by the undisputed facts: He was the owner of 605 acres of which 545 acres constituted the home place, and 60 acres separated from the home place by some six or seven miles. On account of oil developments in the vicinity of the 60-acre tract it has become the most valuable, and it is concerning this latter tract that the principal controversy arises. All of said land was under mortgage to T. M. Bemis and a second mortgage to the People's Bank of Waldo, aggregating more than $5,-000 and was all past due. Foreclosure was threatened, and an attempt was made by W. T. Mitchell to borrow money from the Federal Land Bank to refinance such indebtedness, but he was unable to do so on account of his physical condition, he being at that time, and for many years prior thereto, a helpless cripple on account of paralysis. It was suggested to him by the agent of the Federal Land Bank that if he would convey the land to his son, W. R. Mitchell, it might be possible that he, the son, could borrow the money. This was done by warranty deed, without reservation or exception, in which his wife joined, she being alive at that time. Thereupon, W. R. Mitchell made application to and secured a loan from the Federal Land Bank, which was used to discharge the Bemis debt, but was insufficient to do so, and W. R. Mitchell gave his individual note for the balance. He also renewed the note and mortgage to the People's Bank of Waldo. The intervention, also, alleged that, at the time of said conveyance to him, W. R. Mitchell was single, but in March, 1934, had married the appellant, Oma Mitchell; that they are now separated with a divorce suit pending, and that they had entered into a property settlement by which she had agreed that she had no property rights in said lands; that, since the discovery of oil near said 60-acre tract, she is claiming dower rights in all said land; that W. R. Mitchell, with his (W. T.'s) knowledge, advice, consent and approval, and for a good and valuable consideration, had conveyed by two deeds to his daughters, Mrs. Powell and Mrs. Warmack, an interest in said lands. He prayed that his son be declared

a trustee of all the lands for the benefit of himself; that the deeds to his daughters be recognized; and that all other conveyances executed by W. R. Mitchell be canceled as clouds on his title, except the two mortgages mentioned. The two daughters, appellees, filed an answer and cross-complaint, making similar or identical allegations to that of the intervener, and prayed that the interest of Oma Mitchell be removed as a cloud on their title, she not having joined in her husband's conveyance to them. All the other defendants, about twenty-two in number, to whom W. R. Mitchell had sold and conveyed an interest in said land, answered setting up their respective titles as innocent purchasers, without notice of any interest of W. T. Mitchell therein.

After hearing all the evidence, the court entered a decree sustaining the intervention and cross-complaint of W. T. Mitchell and the cross-complaint of Mrs. Powell and Mrs. Warmack, except as to all defendants to whom conveyances were made by W. R. Mitchell, other than appellants, and quieted and confirmed their respective titles in them, as to whom there is no cross-appeal by appellees. In other words, subject to the mortgages above mentioned, and subject to the interests, rights and title quieted and confirmed in various defendants just mentioned, the court held that the deed from W. T. Mitchell and wife to W. R. Mitchell, dated December 27, 1933, was not a conveyance that made W. R. Mitchell the owner of the property, but only a trustee for the use and benefit of W. T. Mitchell, and all right, title, interest, equity, or estate of W. R. Mitchell mentioned in said deed was canceled as a cloud on title; and that appellant, Oma Mitchell, does not and never has had any dower or other interest in said lands or in the minerals under same. The decree settles and quiets the title to the 545 acres in W. T. Mitchell and his daughters, subject to said mortgages.

Appellant's first contention must be sustained and that is that the court erred in holding that the deed from W. T. Mitchell and wife to his son, dated December 27, 1933, did not convey the whole title, but only made W. R.

Mitchell a trustee. The evidence to sustain it is too meager and unsatisfactory to overcome the recitals of his deed. He says it was so understood between him and his son, and in this he is not even supported by the son who did not testify. His deed recites a consideration of $10 and other good and valuable considerations. These other considerations were the cancellation of the burden of his indebtedness, by shifting it from his shoulders to those of his son, who executed his own notes in the refinancing of his father's indebtedness. At that time, a sufficient sum could not be borrowed to pay the Bemis debt. He offered to convey to his daughters if they would take over the debts, but they declined. He then conveyed to the son. At that time, we judicially know land values were at a very low ebb, on account of the depression in business, and it is doubtful if these lands could have been sold at foreclosure for the amount of the debt. For more than two and one-half years, no question was raised by W. T. Mitchell as to his son's title, and not until some months after land values began to increase, on account of oil activity on other lands in the vicinity of the 60-acre tract, did he question the absolute title of his son. During this time, W. R. Mitchell, to his father's knowledge, and with his verbal and silent consent and approval, made several conveyances of interests in said lands. All of them were made before he intervened in the action to foreclose, including the Boswell and Bush conveyances. In some cases, persons, desiring to buy an interest, were referred by him to his son.

W. R. Mitchell was a purchaser for value and the conveyance to him was not a voluntary conveyance. We so held in the recent case of *Ellis* v. *Nickle*, 193 Ark. 657, 101 S. W. (2d) 958. We there stated the general rule as follows: "Where the purchaser becomes irrevocably bound for the payment of the debt of his vendor for the security of which the property involved is encumbered, and the vendor is released from liability, the consideration is such as to create a purchase for value of the lands conveyed. *Henderson* v. *Pilgrim*, 22 Tex. 464; *Drey* v. *Doyle*, 99 Mo. 459, 12 S. W. 287; *Hanold* v. *Kays*, 64 Mich. 439, 31 N. W. 420, 8 Am. St. Rep. 835; *Warren* v. *Wilder*,

114 N. Y. 209, 21 N. E. 159; Case Note 7, L. R. A. (N. S.) 1020; 27 R. C. L., Chapter, Vendor & Purchaser, § 460.''

Here, it is undisputed that the land was mortgaged for an indebtedness of W. T. Mitchell in excess of $5,000. It was not W. R. Mitchell's debt. W. T. Mitchell, being a helpless cripple, was unable to pay it and was unable to borrow the money to refinance it. The proof tends to show he was destitute and that his daughters helped to supply his groceries. He was unable to help himself or even to feed himself. These facts point very strongly to the conclusion that he was willing and anxious to convey to any of his children who would satisfy the debt. He not only did not make any express reservation of any interest in his deed, but his subsequent conduct shows that he had no thought at the time of retaining any beneficial interest therein. On several occasions, or at least more than once, he referred interested persons to his son as the owner.

We, therefore, hold that by his deed he conveyed the whole title to his son, and that all the conveyances made by the son are valid and binding, including the Boswell and Bush interests, and, of course, their grantees.

As to appellant, Oma Mitchell, it is contended that she waived her dower interest in all the lands by virtue of the following instrument executed by her while her divorce suit was pending against her husband, W. R. Mitchell: ''The plaintiff Oma Mitchell and the defendant W. R. Mitchell, finding it impossible to live together and it being agreed that the plaintiff shall bring suit for divorce on the grounds of indignities to the person, and the defendant shall make no defense to the said suit, and there being no property rights to settle and the plaintiff being a prospective mother it is agreed between the parties that the defendant shall pay all the expenses of this divorce suit and shall pay the plaintiff's doctors bills for her in lying sickness and shall pay her the sum of twenty-five dollars in cash, and that this shall be in full discharge of all financial obligations between the parties hereto.

''Signed this 8th day of July, 1936.

''Oma Mitchell,
''W. R. Mitchell.''

This agreement was never carried out and the divorce suit by said appellant has been dismissed. The undisputed proof shows that W. R. Mitchell failed to comply with his part of the agreement and so the consideration, if any, failed. The suit for divorce was not prosecuted. She has since given birth to his child, and she is still his wife. Moreover, the agreement may be void as being collusive, a question we do not now decide, as it is unnecessary to do so.

W. R. Mitchell, being the owner of the land and appellant, Oma, being his wife, her inchoate right of dower and homestead attaches and remains in all said lands which have not been released and relinquished by her in proper form.

The decree will be reversed, and the cause remanded with directions to enter a decree in accordance with this opinion.