2012 Ark. App. 318

**Denise Carla McCORMICK, Appellant**

v.

**Albert James McCORMICK, Appellee.**

**No. CA 11–1049.**

Court of Appeals of Arkansas.

May 2, 2012.

John A. Crain, Mountain Home, for Appellant.

Michelle C. Huff, Barrett S. Moore, Blair & Stroud, Batesville, for Appellee.

CLIFF HOOFMAN, Judge.

This appeal concerns the division of property acquired by appellant Denise McCormick and appellee Albert McCormick prior to and during their marriage. In six points for reversal, Denise argues that the circuit court misapplied Arkansas Code Annotated section 9–12–315 (Repl. 2009) and erred in dividing the parties' property unequally. We affirm.

Denise is a medical doctor, and Albert is long retired from General Motors. The parties started living together in 2002 and in 2004 began commingling their funds, after Denise had resolved some past tax issues she had with the IRS. They were married in January 2006. In July 2009, Denise filed for divorce. Albert answered and counterclaimed for divorce.

At trial, one of the major issues litigated was the status and division of the forty-acre marital residence, referred to as the Fulton County property, which the parties purchased in February 2006. As part of the transaction, the parties traded an eight-acre piece of property Albert had purchased in 2001, referred to as the Glencoe property. The parties received a credit of $90,000 for the Glencoe property toward the $132,500 purchase price of the Fulton County property. The parties executed a mortgage for the remaining portion of the purchase price, which was satisfied later in 2006. Title to the Fulton County property was taken solely in Al-

bert's name. Albert testified that this was done at Denise's insistence. Both testified that they feared that the IRS would seek to attach Albert's property if the title was in Denise's name.

The parties also contested the division of various bank accounts, retirement accounts, and certificates of deposit, all of which were titled solely in Albert's name. Some of these accounts existed prior to the marriage, and others were acquired during the marriage. Also at issue was the division of four time-share properties titled in both names and other personal property, including various automobiles.

The circuit court entered its decree of divorce on June 6, 2011, granting Denise a divorce on the grounds of eighteen-months' separation. The court found that the Fulton County property was marital property and ordered it sold at auction. The decree provided that Albert would receive the first $90,000 in proceeds on the basis that the down payment was made with his premarital property. The court gave two time-share properties to each party, finding that the total value of the two properties each party received was approximately equal. Although the court found $20,000 in one of the accounts to be marital property, it did not award any of the funds to Denise after finding that she had sold marital property after filing for divorce and had not divided the proceeds with Albert. Denise was also ordered to pay Albert $2,703 for a debt he paid on her Cadillac from her proceeds from the Fulton County property. Denise was awarded a Sebring automobile free of debt and an Avalanche vehicle with its associated debt. Albert was awarded a 2010 Chevrolet pick-up, a riding mower, guns, and other personal items. Denise was made solely responsible for any tax liability she may owe. The court's findings of fact were attached to the decree. In those findings, the circuit court noted that Denise admitted selling various items of marital property totaling $22,300. The court also applied the "unclean hands" doctrine in connection with Denise's contention that she was entitled to one-half of all of the accounts held by Albert because she had made contributions to those accounts. The court discussed in this regard Denise's testimony that she had received a discharge in bankruptcy in 2003 that discharged approximately $166,000 in tax debt to the IRS; her testimony that she did not file tax returns for the years 2006 through 2009 because Albert would not provide her with the information that she needed to do so; and her claim that she did not have any bank accounts or real property titled in her name because this was demanded by Albert. The court noted Albert's testimony to the contrary and stated that it was perplexed as to Denise's failure to file tax returns during the marriage. The court also could not find any rational basis for her failure or neglect to title the real property or bank accounts in her name.

On June 14, 2011, Denise filed a motion for new trial, claiming that the division of property was clearly against the preponderance of the evidence and that the court deviated from the statute without stating its reasons. After being granted an extension of time, Albert filed his response to the motion on July 11, 2011. The motion for new trial was deemed denied on July 14, 2011, and Denise timely filed her notice of appeal on July 22, 2011.

On appeal, Denise contends that the circuit court erred in (1) finding that Albert should receive $90,000 off the top from the sale of the parties' marital home; (2) dividing the four time-share properties owned by the parties without regard to their value; (3) awarding Albert all accounts in his name despite the fact that income used to open these accounts was

acquired from both parties' income; (4) failing to account for any increase in the investments made by the parties during their marriage; (5) failing to consider the contributions of the parties for their property and its appreciation during their marriage and dividing it equally; and (6) failing to divide the marital personal property equally, including a 2010 Chevrolet truck valued at $30,000.

The statutory authority for a circuit court's division of property upon divorce is set forth in Arkansas Code Annotated section 9–12–315 (Repl.2009). Section 9–12–315(a) gives a court the discretion to divide equitably both marital and nonmarital property after considering certain listed factors in order to achieve an equitable distribution. *Box v. Box,* 312 Ark. 550, 851 S.W.2d 437 (1993); *Williford v. Williford,* 280 Ark. 71, 655 S.W.2d 398 (1983). While the circuit court must consider these factors and state its reasons for dividing property unequally, the court is not required to list each factor in its order, nor is it required to weigh all of the factors equally. *Bamburg v. Bamburg,* 2011 Ark. App. 546, 386 S.W.3d 31. The overriding purpose of the property-division statute is to enable the court to make a division of property that is fair and equitable under the circumstances. *Baxley v. Baxley,* 86 Ark.App. 200, 167 S.W.3d 158 (2004). With respect to the division of property in a divorce case, we review the circuit court's findings of fact and affirm them unless they are clearly erroneous or against the preponderance of the evidence. *Id.* A circuit court's finding of fact is clearly erroneous when, although there is evidence to support it, the reviewing court is left with the definite and firm conviction that a mistake has been committed. *Id.* In reviewing a circuit court's findings, we defer to the circuit judge's superior position to determine the credibility of witnesses and the weight to be accorded to their testimony. *Id.* We note that the statute does not compel mathematical precision in the distribution of property; it simply requires that marital property be distributed equitably. *Id.* We will not substitute our opinion as to what exact interest each party should have; we will decide only if the order is clearly wrong. *Bellamy v. Bellamy,* 2011 Ark. App. 433, 2011 WL 2395205.

Denise first argues that the circuit court erred in awarding Albert the first $90,000 from the sale of the property and equally dividing the remaining proceeds. At trial, she testified that she helped to pay off $20,000 of the outstanding mortgage balance on the Glencoe property. She and attorney Ed Chandler also recounted the events surrounding the execution of a "Memo of Understanding" prepared by Chandler and signed by both Denise and Albert. The memo stated that the Fulton County Property "is owned by us 50–50. The deed is in the name of Albert McCormick, but is jointly owned property." Albert acknowledged in his testimony at the hearing and in his deposition that Denise helped to make payments on the Glencoe property, but added that he later bought her interest out prior to their marriage by giving her one-half of what the couple had paid.[1]

Denise relies on this court's decision in *Boggs v. Boggs,* 26 Ark.App. 188, 761 S.W.2d 956 (1988), for the proposition that, where transactions result in great difficulty in tracing the manner in which nonmarital property and marital property have

---

1. In answers to requests for admissions, Albert acknowledged that Denise contributed $40,000 to the two properties.

been commingled, the property acquired in the final transaction may be declared marital property. *Boggs* does not resolve the question in the present case because the circuit court found that, although titled solely in Albert's name, the Fulton County property *was* marital property because it was purchased after the parties' marriage. *Boggs* did not, however, purport to eliminate a circuit court's ability to make an unequal division of marital property in situations where there is difficulty in tracing the funds—separate and marital—used to purchase the property.

In *Potter v. Potter*, 280 Ark. 38, 655 S.W.2d 382 (1983), the supreme court considered a similar situation and stated:

It is a well settled rule that property acquired for a consideration paid in part out of community funds and in part out of separate funds of one of the spouses is in part community and in part separate property. The two estates own such property by way of a sort of tenancy in common.

*Id.* at 48, 655 S.W.2d at 388 (quoting *Hancock Mut. Life Ins. Co. v. Bennett*, 133 Tex. 450, 128 S.W.2d 791 (1939)). *See also Wright v. Wright*, 29 Ark.App. 20, 23, 779 S.W.2d 183, 184 (1989). A party to a divorce is ordinarily entitled to the return of his or her premarital property. *See* Ark.Code Ann. § 9–12–315(a)(1)(B)(2). In essence, the circuit court in the present case reached the same result. The court found that the parties received a credit of $90,000 toward the Fulton County property's purchase price of $132,500 because they traded the Glencoe property Albert owned prior to the marriage for the marital property. It recognized the separate-property aspect of the transaction by awarding Albert the first $90,000 from the sale proceeds. This is an implicit finding crediting Albert's testimony that he had already repaid Denise for her interest in the Glencoe property. The court then recognized the marital property aspect by ordering that the remaining proceeds be divided equally between the parties. This complied with section 9–12–315(a) in that the court made an unequal division of an item of marital property and explained its reason for doing so. *See Gilliam, supra.*

■ Denise next argues that the circuit court erred in its division of the parties' four time-share properties because, contrary to the circuit court's finding, the properties she received were not of equal value to the properties Albert received. Denise testified that the parties purchased a time share at Orange Lake Resort in Florida for $18,000; one at Grand Regency in Branson, Missouri, for $11,000; another time share at the West Gate Resort in Branson for $9000; and one at Stormy Point in Branson for $20,000. She did not give any dates for the purchases. Albert testified that not all of the time shares were marital property. He said that the parties had separated and divided certificates of deposit totaling $40,000 in 2007 or 2008. He used his portion of that money to pay off the Stormy Point time share. There was no other evidence concerning the value of the four time-share properties. The circuit court found that the Orange Lake and Stormy Point properties were of "approximate equal value" to the West Gate and Grand Regency properties. Albert was awarded the Orange Lake and Stormy Point properties, and Denise was awarded the West Gate and Grand Regency properties.

■ The burden was on Denise as the appellant to bring up a record sufficient to demonstrate that the circuit court was in error. *Coatney v. Coatney*, 2010 Ark.App. 262, 377 S.W.3d 381. In opening statements, Denise's attorney said that the four time shares "may not have ascertainable value at this time." There was no proof

presented of what the current value of each property was at the time of trial, or how the properties compared to each other. This is imperative in that the market for real property has changed dramatically since late 2007. *See Mitchell v. Powell,* 194 Ark. 638, 109 S.W.2d 155 (1937) (holding that courts can take judicial notice that market values of real property fluctuate). Section 9–12–315(a) requires that marital property be valued as of the date of the decree. *See Skokos v. Skokos,* 344 Ark. 420, 40 S.W.3d 768 (2001). Where the circuit court found that the properties awarded to each party were of approximately equal value and there is insufficient information for us to conclude otherwise, Denise's argument must fail for lack of a record showing error. *Coatney, supra; see also Young v. Young,* 288 Ark. 33, 701 S.W.2d 369 (1986).

Because Denise's third, fourth, and fifth points are related, we discuss them together. She argues in her third point that the circuit court erred in awarding Albert all of the bank accounts and investment accounts titled solely in his name despite the testimony that the funds in those accounts came from both parties and that the property had been invested to such an extent that tracing the contributions of each party was impossible. Her fourth point is that the circuit court erred in its award of the financial accounts to Albert because they increased in value during the marriage and that increase should be divided equally. In her fifth point, Denise contends that the trial court erred in failing to consider the contributions of the parties toward acquisition, preservation, and appreciation of their property during the marriage in accordance with Ark.Code Ann. § 9–12–315(1)(A)(viii).

Denise testified that, at the time of the marriage, Albert had an investment account at Edward Jones and a Sun America annuity. She also testified that ten certificates of deposit were purchased during the marriage for $10,000 each. She said that she deposited money into an account in Albert's name with the account number ending in 2254 that was used to purchase the certificates. She said that she deposited $181,000 into the account in 2006 and that the parties used the money for living expenses and various purchases. According to Denise, her income was approximately $20,000 per month, while Albert's Social Security and pension totaled $2,000 per month. She introduced the statements on this account for the years 2006 through 2009. However, she added that there was no documentation that she made any deposits into the account. Albert testified that both parties had contributed money to the bank account, with Denise's contributions "far exceeding" his in 2006, although he stated that much of this had been used to pay for improvements to the farm property. He acknowledged that approximately $20,000 in the account was marital property. Both parties testified that, from mid–2007 onward, Denise only contributed enough money to cover the farm expenses.

Albert's annuity with Sun America was opened in August 1996. The balance of that account as of December 31, 2005, shortly before the parties married, was $39,987.65. As of March 31, 2011, this account had grown to $66,390.48. Most of this was due to changes in market value; however, there was a deposit of $20,000 in January 2010, which Albert admitted came from marital funds. Albert also had an account with Edward Jones prior to the marriage. The value of the account as of December 31, 2005, was $35,127.54. Albert transferred the account to one at Charles Schwab in May 2009, when the value was $49,892.81. A Schwab statement shows that at the end of February 2010, the account was worth $62,399.30.

The Schwab account was closed on July 21, 2010, when Albert withdrew $61,708.07. That same day, he deposited $60,000 into a money-market account.

■ There were exhibits introduced by Albert showing three certificates that were purchased during the marriage. Albert acknowledged that all but one of the certificates were opened with marital funds. These certificates, solely in Albert's name, showed a face value of $10,000 each when opened. Each had appreciated approximately $480 to $650 due to interest payments when they were converted into other certificates. There was one certificate in the name of both parties, opened May 1, 2006, in the amount of $10,000, and closed on February 23, 2007, with a balance of $10,287.76. Both parties testified that Denise cashed in the certificate that was titled in both names. Albert also said that the parties divided four other certificates, with each party receiving two. He said that he used the money he received to pay off one of the time shares. He denied that there were any remaining certificates.

■ We begin by noting that, although tracing of money or property into different forms may be an important matter, it is only a tool, a means to an end, not an end in itself; the fact that one spouse made contributions to certain property does not necessarily require that those contributions be recognized in the property division upon divorce. *Canady v. Canady*, 290 Ark. 551, 721 S.W.2d 650 (1986); *Cate v. Cate*, 35 Ark.App. 79, 812 S.W.2d 697 (1991). Also, contrary to Denise's argument, the increase in value of nonmarital property such as an individual retirement account acquired prior to marriage is specifically excluded from the definition of "marital property." Ark.Code Ann. § 9–12–315(b)(5). Our case law has articulated an exception to this rule for the active appreciation of nonmarital assets. In *Layman v. Layman*, 292 Ark. 539, 543, 731 S.W.2d 771, 774 (1987), the supreme court held that "when one spouse makes significant contributions of time, effort and skill which are directly attributable to the increase in value of nonmarital property ... the presumption arises that such increase belongs to the marital estate." The supreme court recently affirmed this rule under the current version of the statute in *Farrell v. Farrell*, 365 Ark. 465, 476, 231 S.W.3d 619, 627 (2006), wherein it stated that "we follow an 'active appreciation' analysis in determining if one spouse's efforts significantly contributed to the increase in value of nonmarital assets...." The circuit court asked Denise about her experience running a business. Denise testified that she had operated a used-car business, her medical practice, and had also been a teacher. Other than this, there was no evidence as to contributions of time, effort, and skill that she had made to increase the value of these investments. Therefore, we cannot say that the circuit court erred in failing to consider the increase in the value to be marital property here.

■ The main premise of Denise's argument under these points on appeal is that she contributed funds to Albert's bank account that existed prior to the marriage. However, her argument does not recognize the possibility that the circuit court could make some other disposition of the property, even if the property was found to be marital. The court did this with its division of the $20,000 in marital funds in the checking account. It essentially said that this $20,000 was marital property but that Denise had sold marital property in excess of that amount and kept the proceeds. Accordingly, the court awarded Albert the entire $20,000, plus additional sums for other items.

In addition, the circuit court found that, despite her contributions, Denise was not entitled to her claim for one-half of all of the real property and financial accounts held in Albert's name due to the fact that she was guilty of unclean hands. Fault or unclean hands are not one of the factors listed for the court's consideration in dividing marital property unequally pursuant to Ark.Code Ann. § 9–12–315(a)(1)(A). However, the specific enumeration of these factors within the statute does not preclude a circuit court from considering other relevant factors, where excluding other factors would lead to absurd results or deny the intent of the legislature to allow for the *equitable* division of property. *Hernandez v. Hernandez*, 371 Ark. 323, 265 S.W.3d 746 (2007). While section 9–12–315 requires the circuit court to consider certain factors and to state the basis for an unequal division of marital property, it does not require the court to list each factor in its order or to weigh all factors equally. *See Gilliam v. Gilliam*, 2010 Ark. App. 137, 374 S.W.3d 108. Moreover, the application of these factors is a factual determination; therefore, this court will not reverse the division of marital property unless that division is clearly erroneous or clearly against the preponderance of the evidence. *Singleton v. Singleton*, 99 Ark.App. 371, 260 S.W.3d 756 (2007). As noted above, the circuit court can make an unequal division of marital property if it specifies its reasons for the unequal division. *Gilliam, supra.* In the present case, that reason was the circuit court's conclusion that Denise had unclean hands. Our courts have upheld unequal divisions of marital property based upon fault considerations. *Stover v. Stover*, 287 Ark. 116, 696 S.W.2d 750 (1985); *Keathley v. Keathley*, 76 Ark.App. 150, 61 S.W.3d 219 (2001); *Forsgren v. Forsgren*, 4 Ark.App. 286, 630 S.W.2d 64 (1982).

Here, the circuit court heard Denise's testimony concerning her income and deposits into Albert's accounts. There was testimony that Denise's $17,000 student loan was paid off from this account, that she gave her son $30,000 for a swimming pool, and that she gave $5000 to her son to purchase some property with a mobile home. The court also considered her admission that she had sold marital property without dividing the proceeds with Albert. The court further found that Denise sought two orders of protection against Albert but that there was insufficient evidence to warrant the orders. Finally, the court also considered Denise's testimony concerning why she did not want to have the real property or bank accounts titled in her name. In essence, the court made a credibility finding that Denise's explanation was not reasonable and, on that basis, declined to award her an equal share of the marital property. In light of the deference owed to the circuit court, we cannot say that it clearly erred in its division of the marital property.

Finally, in her sixth point, Denise argues that the circuit court erred in awarding Albert a 2010 Chevrolet pick-up truck that was free of debt because she had contributed to the payment of the vehicles Albert owned at the time of the marriage, the latest of which was traded in on the 2010 truck.

As of December 2001, when the parties first started discussing marriage, Albert had a 2000 Ford truck and a recreational vehicle, while Denise had a 2000 Yukon Denali, a 1992 Ford pick-up, and a 1993 Jeep Wrangler. Denise testified that, as a trade-in for Albert's 2006 truck, he used a farm truck that she had paid for and his 2000 Ford truck. Denise stated that Albert then purchased a 2008 Dodge truck for $11,700. Denise had a 2000

Chrysler Sebring convertible that she said had not been licensed since March 2010. She acquired a 2008 Avalanche in 2010 and still owed $20,000 on it at the time of trial. Albert testified that he had nothing to do with the purchase of the Avalanche. He said that he had a new Ford pick-up at the time the parties married. He further testified that he traded that vehicle in and was allowed $20,000 for it toward the purchase of a 2006 Chevrolet truck to be used on the farm. He also said that he did not have a car payment until he leased a Cadillac for Denise, which she later traded in on the Avalanche.

As with Denise's second point, we must affirm because she did not bring up a sufficient record to show that the circuit court erred. In our review of the record, we could not find any testimony concerning a 2010 Chevrolet truck or establishing the value of the various vehicles involved. Both parties were awarded vehicles free of debt. After the separation, Denise purchased a vehicle on which she still owed $20,000. The circuit court traced Albert's premarital Ford truck toward the purchase of a 2006 Chevrolet truck that he traded toward the purchase of the 2008 Dodge truck, which he then traded for the purchase of the 2010 Chevrolet. Although the 2008 Dodge may have been marital property, we cannot say that the circuit court clearly erred in its division of the vehicles because, even if the 2010 Chevrolet truck was marital property, the court still explained its reasons for the unequal division based on the finding that Denise was guilty of unclean hands.

Affirmed.

ROBBINS and MARTIN, JJ., agree.