Cite as 2021 Ark. App. 348

# ARKANSAS COURT OF APPEALS

DIVISION I

**No.** CV-20-551

| | |
|---|---|
| AMANDA CHAMPLIN<br>APPELLANT<br><br>V.<br><br>STEVEN SPENCER CHAMPLIN<br>APPELLEE | **Opinion Delivered** September 22, 2021<br><br>APPEAL FROM THE BENTON COUNTY CIRCUIT COURT<br>[NO. 04DR-19-937]<br><br>HONORABLE JOHN R. SCOTT, JUDGE<br><br>AFFIRMED |

**RITA W. GRUBER, Judge**

Amanda and Spencer Champlin were divorced by decree entered March 10, 2020, after an eleven-year marriage. Amanda appeals from the divorce decree, arguing that the circuit court abused its discretion (1) in denying her motion for continuance; (2) in its calculation of alimony; and (3) in its calculation of child support. We affirm.

The parties were married on August 2, 2008, and separated in May 2019. They have two daughters: M1 (age eleven), and M2 (age eight). At a temporary hearing held on June 25, 2019, the testimony indicated that Spencer worked full time to support the family and that Amanda stayed home with the children and worked part time from home. Spencer was living at his parents' home and had a bedroom ready for the children. Amanda and the children were still living in the family home. Spencer testified regarding Amanda's erratic and sometimes hostile behavior in front of the children. On at least five occasions between December 2018 and May 2019, Amanda "kicked" Spencer out of the house and threw his

clothes and other belongings into the hallway, living room, or outside. Spencer testified that the children were present when these incidents happened and were upset. He also produced numerous text messages in which Amanda referred to Spencer in a critical and derogatory manner and threatened to keep him from the children. But he said she had also repeatedly asked him to take custody of the children. Amanda admitted that she had been physically violent toward Spencer on two different occasions while the children were home.

The court awarded temporary custody to Spencer in an order entered June 27, 2019, but ordered him to pay Amanda's household expenses. At the hearing, the court found evidence that Amanda had attempted to keep Spencer from the children but emphasized to Spencer his duty as custodial parent to foster and nurture the relationship between the children and Amanda. The court awarded visitation to Amanda "at the discretion" of Spencer but, at a minimum, consistent with the standard visitation schedule. The court also appointed an attorney ad litem to represent the children.

Trial was set for October 31, 2019, but the matter was continued until February 21, 2020, due to conflicts with the court's docket. Before the scheduled October trial, the attorney ad litem recommended that Spencer have primary custody of the children. She made a second recommendation before the February trial, again recommending that Spencer have primary custody. At the beginning of the hearing on February 21, Amanda asked the court for a continuance based on her contention that the ad litem had not conducted a sufficient investigation. Specifically, she argued that the ad litem had not spoken with the children's counselors since her recommendation in October and that she had a duty to perform a continuing investigation. After hearing arguments from counsel and the ad litem, the court denied the motion and conducted the trial.

In her opening statement, Amanda conceded the issue of custody and agreed that Spencer should have primary custody of the children. Spencer testified about Amanda's hostile behavior, the physical abuse, and her derogatory and threatening text messages that occurred before the temporary hearing as well as several events since the temporary hearing demonstrating that the unstable behavior had continued. In July, Amanda sent him a text message asking him to come take the house and the kids and stating that she was "done struggling" and needed "to walk away." Spencer also detailed an event in September 2019 in which Amanda had threatened to commit suicide, although Amanda testified that she had not intended to actually commit suicide but was merely being manipulative because of the stress. He also testified that she had continued to be difficult with regard to coparenting.

At the conclusion of the hearing, the circuit court awarded Spencer primary custody and Amanda standard visitation. The court assumed full-time employment for Amanda at minimum wage, imputed income, and ordered her to pay $121 per week in child support. The court also ordered Spencer to pay alimony to Amanda of $1000 per month for forty-eight months.

## I. *Motion for Continuance*

Amanda's first point on appeal is that the circuit court should have granted her motion for continuance in order to allow the attorney ad litem to conduct a more thorough and continuing investigation into the best interest of the children. She argues specifically that the ad litem had not spoken to the children's counselors since she made her recommendation in October 2019 that Spencer should have primary custody. Although she had planned to concede custody at the hearing, she contended that the ad litem's recommendation in February 2020 was stale.

Amanda argued that the ad litem's failure to speak to the children's counselors since making her recommendation in October violated her duty of continuing investigation under Arkansas Supreme Court Administrative Order No. 15, which she claims is to protect the integrity of the process. But Amanda did not call the counselors as witnesses or offer any evidence about what they might say if the ad litem were to speak with them, nor did she suggest how the extra time might change her decision to concede custody. Indeed, her counsel admitted he did not "think that anything the counselors would have to say at this point would really alter the recommendation" he had made to his client with respect to custody. Amanda admitted that the ad litem's recommendation "probably wouldn't change" but argued that it was "not necessarily about the recommendations, so much as it is the process and being able to have confidence in that process." The ad litem said that she had investigated the case and did not feel the need to speak with the counselors again to make her recommendation.

The court denied the motion for continuance. It noted that there was no requirement that any of the parties have a conversation with the counselors and that counselors generally "don't like courts" and "normally are not cooperative." The court also stated that it was unwilling to delay any longer and said the children and the parties needed closure.

We review a circuit court's denial of a motion for continuance using an abuse-of-discretion standard. *Goodson v. Bennett*, 2018 Ark. App. 444, at 6, 562 S.W.3d 847, 854. An appellant must not only demonstrate that the circuit court abused its discretion by denying the motion but also must show prejudice that amounts to a denial of justice. *Sims v. Moser*, 373 Ark. 491, 510, 284 S.W.3d 505, 520 (2008). Amanda does not identify any specific

4

prejudice that resulted from the ad litem's failure to speak with the children's counselors between her October recommendation and her February recommendation. She does not allege what the counselors would have said or how that would have affected the ad litem's recommendation. The ad litem told the circuit court that she did not need to speak to the counselors to make a recommendation. On this record, we cannot say that the circuit court's decision denying Amanda's request for a continuance was an abuse of discretion. For the circuit court to have abused its discretion, it must have acted improvidently, thoughtlessly, or without due consideration. *Null v. Ark. Parole Bd.*, 2019 Ark. 50, at 2, 567 S.W.3d 482, 483. Moreover, Amanda has failed to demonstrate any prejudice amounting to a denial of justice from the court's refusal to grant her motion. Accordingly, we affirm.

## II. *Alimony*

Amanda also challenges the circuit court's calculation of alimony. She contends the court abused its discretion because it "knowingly placed [her] in an untenable financial situation." At the time of the final hearing, Amanda's monthly income from part-time employment was $938.

Amanda argued to the circuit court that her expected expenses were around $5500 per month, her income was less than $1000 per month, and Spencer earned approximately $9000 per month with "realistic expenses" of $4500 per month based on her calculations. On appeal, she contends that her expenses are over $6000 per month including child support, her share of the children's health-insurance premiums, and her credit and loan payments and that Spencer's net monthly income is over $10,000 per month with expenses of less than $5000 per month. She argued both at trial and here that Spencer has a large surplus, which she needs to make ends meet. She claims that she has been out of the

5

workforce for over six years, has applied for numerous full-time positions, and has yet to find a job. She also contends that she had never made more than $40,000 per year even when she was working full time.

Spencer argues that Amanda is thirty-five years old, has a college degree, and worked full time in the loan industry before she quit to take care of the children. He claimed in the circuit court that he did not have the ability to pay alimony because his expenses after supporting himself and the children left him with less than $500 per month in extra income. On appeal, he argues that after payment of all monthly expenses, he has $1939 in discretionary income from which to pay alimony. He also argued at trial and argues on appeal that one consideration regarding the amount of alimony in this case is the fact that Amanda's lack of income is a voluntary choice and that she had no interviews to secure employment in the nine months between the parties' separation and the final hearing.

The circuit court found that Amanda had need and Spencer had the ability to pay. In considering Amanda's request for alimony, the circuit court said that it had also considered the length of the parties' marriage, the fact that Amanda had been unemployed for six years by agreement of the parties, and Spencer's substantial income. The court noted, however, that Amanda's need was "somewhat created" by her and the actions she had taken and not taken. It determined that the appropriate amount was $1000 per month.

We give the circuit court great discretion to fix the amount of alimony it awards, and we will not disturb the award on appeal unless there is an abuse of that discretion. *Farrell v. Farrell*, 2017 Ark. App. 7, at 7–8, 510 S.W.3d 787, 792. The circuit court may make an award of alimony that is reasonable under the circumstances, and the amount of alimony should not be reduced to a mathematical formula because the need for flexibility outweighs

the need for relative certainty. *Brave v. Brave*, 2014 Ark. 175, 433 S.W.3d 227. We have further emphasized that the circuit court is in the best position to view the needs of the parties in connection with an award of alimony. *Foster v. Foster*, 2016 Ark. 456, at 15, 506 S.W.3d 808, 817.

The purpose of alimony is to rectify the economic imbalance in earning power and standard of living of the parties to a divorce in light of the particular facts of each case. *Davis v. Davis*, 79 Ark. App. 178, 84 S.W.3d 447 (2002). The primary factors to be considered in making an award of alimony are the need of one spouse and the ability of the other spouse to pay. *Id*. Secondary factors to be considered by the circuit court include (1) the financial circumstances of both parties; (2) the amount and nature of the income, both current and anticipated, of both parties; (3) the extent and nature of the resources and assets of both parties; and (4) the earning ability and capacity of both parties. *Farrell*, 2017 Ark. App. 7, at 8, 510 S.W.3d at 792.

It is not our duty under our standard of review to simply substitute our judgment for that of the circuit court, which was in a far better position to judge the credibility of the witnesses. *Berry v. Berry*, 2017 Ark. App. 145, at 3, 515 S.W.3d 164, 166. There is no set formula a court must follow in awarding alimony. Here, the circuit court weighed the factors it considered appropriate and awarded alimony. Spencer was awarded primary custody and introduced evidence to support his contention that his discretionary income after payment of all his expenses was insufficient to pay what Amanda requested. Amanda is a college-educated, thirty-five-year-old woman with no evident physical or mental limitations. She does not have primary custody of her school-aged children, has worked full time in the not–too–distant past, and appeared to the court to be voluntarily underemployed.

The circuit court is in the best position to view the needs of the parties in connection with an alimony award. *Bennett v. Bennett*, 2016 Ark. App. 308, 496 S.W.3d 409. After a de novo review of the record in this case, we are not left with a distinct and firm impression that the circuit court abused its discretion in its calculation of alimony.

### III. *Child Support*

Finally, Amanda challenges the court's award of child support. She agrees that child support was appropriate but contends that the amount is excessive because the parties spend equal time with the children and thus that a reduction in child support is appropriate.

As a rule, we will not reverse a circuit court's decision regarding the amount of child support absent an abuse of discretion. *Perry v. Perry*, 2020 Ark. App. 63, at 2, 594 S.W.3d 126, 129. The child-support scheme in Arkansas is governed by Arkansas Supreme Court Administrative Order No. 10, which includes a family-support chart that sets the amount of support due based on the payor's income. *Johnson v. Young*, 2017 Ark. App. 132, 515 S.W.3d 159. It is a rebuttable presumption that the amount contained in the family-support chart is the correct amount of child support to be awarded. Ark. Code Ann. § 9-12-312(a)(3)(C) (Repl. 2020). Only upon a written finding or specific finding on the record that the application of the family-support chart would be unjust or inappropriate, as determined under established criteria set forth in the family-support chart, will the presumption be rebutted. Ark. Code Ann. § 9-12-312(a)(3)(D). The court may grant less or more support if the evidence shows that the needs of the dependents require a different level of support. Ark. Sup. Ct. Admin. Order No. 10(I) (2019). Finally, under Administrative Order No. 10(III)(d),

[i]f a payor is unemployed or working below full earning capacity, the court may consider the reasons therefor. If earnings are reduced as a matter of choice and not for reasonable cause, the court may attribute income to a payor up to his or her earning capacity, including consideration of the payor's life-style. Income of at least minimum wage shall be attributed to a payor ordered to pay child support.

Ark. Sup. Ct. Admin. Order No. 10(III)(d) (2019).

In this case, the circuit court specifically noted that Amanda's economic need was, at least in part, voluntary. It followed Administrative Order No. 10 and imposed the minimum amount of income. While she argues here that the court should have deviated downward due to the fact that she spends an equal amount of time with the children, she did not argue this to the circuit court. We will not consider an issue that was not raised in the circuit court. *See Dew v. Dew*, 2012 Ark. App. 122, 390 S.W.3d 764.

Affirmed.

WHITEAKER and VAUGHT, JJ., agree.

*Matthews, Campbell, Rhoads, McClure & Thompson, P.A.*, by: *Sarah L. Waddoups*, for appellant.

*Taylor Law Partners, LLP*, by: *John J. Mikesch*, for appellee.