Cite as 2024 Ark. App. 519

# ARKANSAS COURT OF APPEALS
DIVISION I
No. CV-23-283

| | | |
|---|---|---|
| PHILLIP THAMES | | Opinion Delivered October 30, 2024 |
| | APPELLANT | |
| | | APPEAL FROM THE PULASKI COUNTY CIRCUIT COURT, FOURTEENTH DIVISION [NO. 60DR-17-963] |
| V. | | |
| MARGARET ANN THAMES | | |
| | APPELLEE | HONORABLE SHAWN J. JOHNSON, JUDGE |
| | | AFFIRMED |

**RAYMOND R. ABRAMSON, Judge**

Phillip Thames appeals the divorce decree entered by the Pulaski County Circuit Court granting him a divorce from Margaret Ann Thames. On appeal, Phillip argues that the circuit court erred by (1) awarding Margaret an interest in his house; (2) awarding Margaret an interest in his vehicles; (3) requiring him to pay the storage costs for Margaret's personal property; and (4) denying his request for a continuance. We affirm.

On March 14, 2017, Phillip filed a divorce complaint against Margaret. He alleged that they married on December 16, 2007, and separated on March 3, 2015, and that there were no property rights to adjudicate.

On October 5, Phillip's attorney moved to withdraw, alleging that he could not locate Phillip and that Phillip refused to cooperate.

On October 20, Margaret moved to compel, alleging that Phillip did not answer her interrogatories and requests for production that she had served on him in August. She further stated that she had sent a good-faith letter to Phillip's counsel on September 20.

On August 21, 2019,[1] the court ordered Phillip to produce answers to interrogatories and requests for production by September 27.

On June 25, 2021, the court set a hearing for November 29. On July 21, Margaret moved to impose sanctions. She asserted that Phillip had failed to comply with the court's order requiring him to produce discovery by September 27, 2019.

On September 23, Phillip moved to compel through new counsel. He argued that Margaret had failed to respond to interrogatories and requests for production served on June 28, 2021. However, on October 29, Phillip's new attorney moved to be relieved as counsel because Phillip had terminated the representation. On November 18, Phillip filed a request to represent himself, and on November 22, the court relieved Phillip's counsel.

Also on November 22, Margaret renewed her motion for sanctions against Phillip and for a continuance. She alleged that Phillip had provided incomplete discovery responses on August 2, 2021, and that she did not have the necessary information to present her case for the division of their property. She stated that Phillip had "spent four years attempting to hide assets."

---

[1]On August 7, 2019, the court issued failure-to-prosecute letters to Phillip at his personal address and to Margaret's counsel. There was apparently no activity in the case from October 2017 until August 2019.

On November 29, the court held a hearing. The court found that Margaret was entitled to attorney's fees for Phillip's discovery violations. However, it reserved a ruling on the sum until the final divorce hearing. The court set the hearing for June 20, 2022. On June 14, Phillip moved pro se to impose sanctions on Margaret for refusing to comply with discovery requests.

On June 20, the court held a final divorce hearing with Phillip appearing pro se and Margaret appearing with counsel. The court first considered Phillip's motion for sanctions. Margaret objected to the motion because her response time had not expired. Phillip then requested a continuance for consideration of the motion. Margaret agreed to a continuance if Phillip provided her access to her stored personal property during the interim, but Phillip refused her offer. The court then denied Phillip's request for a continuance.

Phillip testified that he married Margaret in December 2007 and that they separated in March 2015. He stated that in 2004, he purchased a house on Marlene Drive, and the house was valued at $119,000. He explained that after they married, Margaret moved into the house, and they used marital income, including Margaret's salary, to pay the mortgage. He agreed that he gained equity in the house during the marriage, and he testified that the mortgage balance is $62,000. Phillip informed the court that the monthly principal payment for the mortgage is slightly over $300. He also agreed that the Marlene Drive house had appreciated in value, but he declined to share the cost of an appraisal. He further acknowledged that Margaret helped maintain the house.

Phillip testified that since their separation, he had spent $3,960 storing Margaret's personal property in storage facilities. He explained that the property had been in the house's garage, but he wanted to park his new car inside the garage. Phillip testified that he has a 2017 Honda Accord, a 2005 Toyota Echo, a 2001 Ford F-250, a 1997 Ford F-150, and a 2003 GMC truck. He noted that he had owned some of the cars for twenty years and that two of the cars do not run. He also testified that the vehicles are worthless.

Margaret testified that she and Phillip resided at the Marlene Drive house during the marriage. She stated that she was employed during the marriage, and she contributed to household expenses and maintained the house. She noted that she signed the loan for a new air conditioning and heating unit. Margaret further stated that she requested access to the storage facilities to retrieve her personal property, but Phillip refused to allow her access until the final divorce hearing. She testified that she did not agree to the storage of her personal property, and she believed the storage was unnecessary.

At the conclusion of the hearing, Margaret requested an interest in the house and the older vehicles. She acknowledged Phillip's testimony that he obtained the vehicles before the marriage, but she pointed out that Phillip did not list the vehicles as nonmarital property in his discovery responses. She thus claimed that she could not verify when the vehicles were purchased.

On January 4, 2023, the court entered a divorce decree. As to the Marlene Drive house, the court acknowledged that the residence was purchased before the marriage, but the court found that the parties used the house as a marital residence, that Margaret helped

pay the mortgage during the marriage, and that Margaret decorated and maintained the house. The court thus concluded that Margaret had an equitable interest in the house totaling $15,268.64.

The court awarded the parties their "everyday vehicles" as their sole and separate property. The court noted that the parties had four other vehicles, a 1997 Ford F-150, a 2005 Toyota Echo, a 2001 Ford F-250, and a 2003 GMC truck, and the court ordered the parties to agree on the division of the vehicles within thirty days of the decree; if the parties could not agree, the court ordered them to sell the vehicles and equally divide the proceeds.

The court also addressed the storage fees for Margaret's personal property. The court ordered Margaret to reimburse Phillip $1,980 for the fees, and it noted that the parties could set off the payment obligations. The court additionally awarded Margaret $1,000 in attorney's fees and costs as sanctions for Phillip's discovery violations during the pendency of the case. Phillip appealed the divorce decree, and he abandoned any pending but unresolved claims.

Domestic-relations cases are tried de novo on appeal, and the appellate court does not reverse a circuit court's findings unless they are clearly erroneous. *Taylor v. Taylor*, 345 Ark. 300, 47 S.W.3d 222 (2001). A finding is clearly erroneous when, although there is evidence to support it, the reviewing court on the entire evidence is left with a definite and firm conviction that a mistake has been made. *Norman v. Norman*, 342 Ark. 493, 30 S.W.3d 83 (2000).

5

Further, a circuit court has broad powers to distribute property in order to achieve an equitable distribution. *Keathley v. Keathley*, 76 Ark. App. 150, 61 S.W.3d 219 (2001). The overriding purpose of the property-division statute is to enable the court to make a division of property that is fair and equitable under the circumstances. *Id.* With respect to the division of property in a divorce case, we review the circuit court's findings of fact and affirm them unless they are clearly erroneous or against the preponderance of the evidence. *Thomas v. Thomas*, 68 Ark. App. 196, 4 S.W.3d 517 (1999). In reviewing a circuit court's findings, we defer to the court's superior position to determine the credibility of witnesses and the weight to be accorded to their testimony. *Keathley*, 76 Ark. App. 150, 61 S.W.3d 219.

On appeal, Phillip first argues that the circuit court erred by awarding Margaret an interest in his house. He points out that the house is nonmarital property, and he asserts that Margaret did not establish entitlement to an interest. He also argues that the record is "too muddled" to support the award to Margaret, and he claims that the award is inequitable because he is older than Margaret and earns less income.

In response, Margaret acknowledges that Phillip purchased the house before the marriage, but she argues that the undisputed evidence shows that they used joint marital funds to pay the mortgage during the marriage. She also claims that the court should have awarded her half of the equity because the house's value increased over the course of the marriage and she helped maintain the house.[2]

---

[2]To the extent that Margaret asks this court to reverse because the award should have been more, Margaret did not cross-appeal. Our case law is well settled that when an appellee

6

Under Arkansas law, nonmarital property "shall be returned to the party who owned it prior to the marriage unless the court shall make some other division that the court deems equitable," taking into consideration certain factors listed in the statute. Ark. Code Ann. § 9-12-315(a)(2) (Repl. 2020). But earnings acquired subsequent to marriage are classified as marital property. Ark. Code Ann. § 9-12-315(b); *Box v. Box*, 312 Ark. 550, 851 S.W.2d 437 (1993). Further, it has long been held that a nonowning spouse is entitled to some benefit by reason of marital funds having been used to pay off debts on the owning spouse's nonmarital property. *Steeland v. Steeland*, 2018 Ark. App. 551, 562 S.W.3d 269; *see also Box*, 312 Ark. 550, 851 S.W.2d 437 (holding that the circuit court erred in failing to consider that marital property, in the form of marital earnings, was used to pay debt against nonmarital property). The property-division statute, however, does not require mathematical precision in property division but only that the property be distributed equitably. *Perser v. Perser*, 2019 Ark. App. 467, at 5, 588 S.W.3d 395, 400; *Hoover v. Hoover*, 70 Ark. App. 215, 221, S.W.3d 560, 564 (2000). Further, we will not substitute our judgment on appeal as to the exact interest each party should have but will decide only whether the order is clearly wrong. *Jones v. Jones*, 2014 Ark. 96, at 7, 432 S.W.3d 36, 41.

In this case, we hold that the circuit court did not clearly err in awarding Margaret an interest in the house. Phillip admitted that during the seven-year marriage, they used marital

seeks something more than she received in the lower court, a notice of cross-appeal is necessary to give us jurisdiction of the cross-appeal. *Priesmeyer v. Huggins*, 2021 Ark. App. 410, 637 S.W.3d 274.

income—including Margaret's salary—to pay the mortgage and that he gained equity in the house. He also acknowledged that Margaret helped maintain and decorate the house. Phillip further stated that in 2004, the house's value was $119,000, and at the time of the hearing, the mortgage balance was $62,000. Given the circumstances of this case, we cannot say that the circuit court's decision was clearly wrong.

Phillip next argues that the circuit court erred by awarding Margaret an interest in his vehicles. He points to his testimony that he purchased the cars before the marriage, and he argues the cars are therefore nonmarital property. He asserts that Margaret offered no evidence showing otherwise.

We find no error by the circuit court. Phillip did not list the cars as nonmarital property in his discovery response, and he further claimed that he had owned the cars for twenty years, but the cars included a 2005 Toyota. Phillip also stated that the cars are worthless. We defer to the circuit court's superior position to determine the credibility of witnesses and the weight to be accorded to their testimony. *McCormick v. McCormick*, 2012 Ark. App. 318, 416 S.W.3d 770.

Phillip also argues that the circuit court erred by requiring him to pay partial storage costs for Margaret's personal property. He contends that he should not be charged with storing Margaret's property that she "arguably abandoned."

Phillip fails to establish a reversible error. Margaret testified that she asked Phillip for her personal property, but Phillip refused to allow her access. Again, we defer to the circuit

8

court to determine the credibility of witnesses. *McCormick*, 2012 Ark. App. 318, 416 S.W.3d 770. We will not reweigh the evidence on appeal.

Phillip finally argues that the circuit court erred by denying his request for a continuance. He asserts that the court denied his request for only procedural reasons.

We review a circuit court's denial of a motion for continuance using an abuse-of-discretion standard. *Goodson v. Bennett*, 2018 Ark. App. 444, at 6, 562 S.W.3d 847, 854. For the circuit court to have abused its discretion, it must have acted improvidently, thoughtlessly, or without due consideration. *Champlin v. Champlin*, 2021 Ark. App. 348, 634 S.W.3d 566. A circuit court has an obligation to manage and control its docket in an efficient manner, and it is crucial to our judicial system that circuit courts retain the discretion to control their dockets. *Frost v. Frost*, 2009 Ark. App. 290, 307 S.W.3d 41. Further, in challenging the denial of a continuance, an appellant must not only demonstrate that the circuit court abused its discretion but also must show prejudice that amounts to a denial of justice. *Champlin*, 2021 Ark. App. 348, 634 S.W.3d 566.

In this case, the divorce complaint had been pending since 2017, and the final hearing had been set for more than six months. Phillip moved for sanctions six days before the final hearing, and he orally moved for a continuance at the beginning of the hearing to resolve the sanctions. Given these circumstances, we find no abuse of discretion in the circuit court's denial of a continuance. Phillip additionally fails to identify any specific prejudice to him that resulted from the denial.

Affirmed.

VIRDEN and HIXSON, JJ., agree.

*The Law Office of Geoffrey D. Kearney, PLLC*, by: *Geoffrey D. Kearney*, for appellant.

*Wallace, Martin, Duke & Russell, PLLC*, by: *Dale B. Duke*, for appellee.