John Marvin BAGWELL *v.*
Idell Gertrude BAGWELL

84-2

668 S.W.2d 949

Supreme Court of Arkansas
Opinion delivered May 14, 1984
[Rehearing denied June 18, 1984.]

*Ramsay, Cox, Lile, Bridgeforth, Gilbert, Harrelson &*
*Starling,* by: *William G. Bridgeforth,* for appellant.

*Holmes & Trafford,* by: *Winfred A. Trafford* and *C.*
*Norton Bray,* for appellee.

JOHN I. PURTLE, Justice. This appeal challenges the Chancellor's division of marital and nonmarital property in a divorce suit. The appellant husband claims the division violated Ark. Stat. Ann. § 34-1214 (Act 705 of 1979) by granting an unequal division of marital property and by awarding the wife possession of the home and a sizeable portion of the husband's nonmarital property.

This is a second marriage of Marvin and Idell Bagwell. The parties are in their mid-sixties. Both are on Social Security. He is unemployable for health reasons and she is an unemployed nurse. They originally married in 1958, divorced in 1962 and remarried in 1964. The Chancellor changed the title to the home to a tenancy in common and, without objection from the appellant, gave the wife the furniture and possession of the dwelling. In lieu of alimony the Chancellor ordered the husband to pay the balance of a $6,400 mortgage on the home. One car was given to the wife; another car and a pickup truck to the husband.

The parties have children by earlier marriages, but none of their own. It is undisputed that Mr. Bagwell did not want Mrs. Bagwell to work, though she was trained as a nurse. She did work part of the time they were married and she kept all her earnings for herself. Her income from Social Security is $364 each month; his is $784. Mrs. Bagwell had $13,000 in savings, about a third of which came from nonmarital sources. She was the beneficiary of a $25,000 life insurance policy on Mr. Bagwell's life which had a cash value of $11,500.

During the first marriage the Bagwells had begun purchasing a 360 acre farm in Woodruff County now valued at between $360,000 and $430,000. At the first divorce Mrs. Bagwell's interest terminated because Mr. Bagwell purchased her interest. After the second marriage a part of the remaining debt on the farm was paid off with marital funds. Before the second marriage Mr. Bagwell had purchased 160 acres in Jefferson County. Part of the debt on the land was paid with marital earnings.

Mr. Bagwell had farmed his entire life and in 1977, after

suffering a heart attack, he began farming with his son and assumed his son's outstanding farming debt of $246,092 to Farmers and Merchants Bank of Stuttgart. His son's debt, added to his own, totaled $440,000 as of December 30, 1981. This obligation has been reduced to $233,494, as of the date of trial.

The court found other assets to consist of a lump sum Social Security settlement to Mr. Bagwell in the sum of $10,912, which had been received and mostly spent before this divorce and which was ruled marital property; a $13,000 savings account of Mrs. Bagwell's, about two-thirds of which was marital; the $25,000 life insurance policy mentioned earlier; personal property in the form of "certificates and reserves" held by Riceland Foods approximating $50,000; and some $70,000 in trust subject to court orders derived from the sale of farm machinery and crop income from Producer's Rice Mill. The court apparently intends for these sums to be applied to the balance owed on the Woodruff farm.

In addition to awarding Mrs. Bagwell possession of the home and ordering Mr. Bagwell to pay the mortgage payments, the Chancellor found that since the farms had been paid for partially with marital funds the two farms should be sold with the proceeds applied first to the indebtedness due Farmers and Merchants Bank and then divided, seventy percent of the Woodruff County lands to Mr. Bagwell and thirty percent to Mrs. Bagwell, and sixty-five percent of the Jefferson County lands to Mr. Bagwell and thirty-five percent to Mrs. Bagwell, with Mr. Bagwell responsible for all taxes due as a result of the sales. Mrs. Bagwell's savings account was offset against Mr. Bagwell's Social Security settlement and Mr. Bagwell was ordered to pay the premiums on the life insurance policy payable to Mrs. Bagwell.

Mr. Bagwell insists the division is grossly unfair. He also argues that it was error to distribute the marital property disproportionately and to award Mrs. Bagwell part of Mr. Bagwell's nonmarital property. The arguments are dealt with as one. The marital property in this case had the

lesser value in relation to the two farms, and it would serve no good purpose to deal with each item. Some assets, the cars for example, were divided in kind and were offsetting. Sometimes marital property cannot be divided exactly equally in kind. It may become necessary to cause one party to pay some amount from separate funds in order to abide by the law. If marital property is not divided equally the reasons must be explained. In this case the Chancellor gave careful attention to the factors listed in § 34-1214 and outlined the reasons for his conclusions in his opinion. We have noted that our statute, § 34-1214, does not dictate an inflexible rule; rather it allows latitude for the exercise of the Chancellor's best judgment in complying with the statute. *Day* v. *Day*, 281 Ark. 261, 663 S.W.2d 719 (1984); *Williford* v. *Williford*, 280 Ark. 71, 655 S.W.2d 398 (1983). We believe the end result here was unfair and the Chancellor's method of dividing the property was clearly erroneous. The rule, as appellant points out, that we will not reverse the Chancellor unless his findings are clearly erroneous applies to findings of fact, but we have gone on to say that under ARCP Rule 52 we will not reverse the Chancellor's division of property in divorce unless that division can be said to be clearly against the preponderance of the evidence. *Russell* v. *Russell*, 275 Ark. 193, 628 S.W.2d 315 (1982). We think the division of the property in this case is clearly against the preponderance of the evidence.

It was not error for the Chancellor to find that Mrs. Bagwell was entitled to some benefit by reason of marital funds having been used to pay off debts on the two nonmarital farms. However, her interest should be limited to half of the increase in value of the farms during the second marriage because she had been paid for her interest at the time of the first divorce.

We have doubts about the ultimate fairness of the decree's imposition of the entire tax liability of the sales of real and personal property on Mr. Bagwell. When that liability is determined it may be that the end result is unfair to appellant. Based on certain assumptions, Mr. Bagwell's accountant testified that a sale of the Woodruff County farm at $1,000 an acre would create a tax liability of $117,811, and

a tax liability of $137,255 at $1,200 per acre, enabling the appellant to argue that after paying the $163,494 due the bank, the terms of the decree would net $19,743 to Mr. Bagwell and $58,952 to Mrs. Bagwell, a pronounced disparity. Of course, these figures were merely projections based on assumptions that might not prove out. They do illustrate, however, that tax consequences of court ordered sales of property may appear to be equitable today but be rendered inequitable by later developments. We have recognized more than once that the tax consequences which subsequently evolve should not be permitted to operate inequitably, and the legislature has recognized that hazard by amending § 34-1214 to expressly include tax consequences as one of the criteria for consideration. See *Day* v. *Day, supra; McMurtray* v. *McMurtray,* 275 Ark. 303, 629 S.W.2d 285 (1982). In *McMurtray* we were able to allocate the tax liability, whereas in *Day* we simply recognized the possibility of tax inequities and modified the decree to reserve jurisdiction in the trial court to make such adjustments as the final tax consequences indicated. We think that course is appropriate to this case and we modify the decree accordingly. On remand the Chancellor should make a determination of the tax liability if it can be done at that time. If the tax results are not ascertainable at that time, the court should retain jurisdiction until the appropriate time. The tax liability and apportionment of nonmarital property are so closely tied together it will be necessary for the Chancellor to redetermine both issues.

Affirmed in part and reversed in part and remanded.

Hays, J., dissents.

Steele Hays, Justice, dissenting. I take no exception to reserving jurisdiction in the trial court to permit the Chancellor to modify the decree with respect to the tax liability resulting from the sale of properties, if that seems appropriate. But I disagree that the overall division of property in this case can be said to be clearly erroneous. The Chancellor's division of the two farms, ostensibly nonmarital assets, is entirely equitable since marital funds were used in part to acquire them. Too, if the equities favor

allowing a portion of the farms to the appellee, there is no logical reason why a proportionate share of the appreciated value should not also be awarded her. The Chancellor doubtless took these factors into account, as well as the fact that the appellant committed $246,092 in marital funds to pay off farming liabilities of his son, a material aspect of the overall division which the majority opinion disregards.

We have construed Act 705 of 1979 as investing broad discretion in the Chancellor to divide properties equitably in divorce [*Day* v. *Day*, 281 Ark. 261, 663 S.W.2d 719 (1984); *Williford* v. *Williford*, 280 Ark. 71, 655 S.W.2d 398 (1983)] and I see no compelling reason why we should revise his division in this case.