Barbara J. BOX *v.* John T. BOX

92-928                                                            851 S.W.2d 437

Supreme Court of Arkansas
Opinion delivered April 19, 1993
[Rehearing denied May 24, 1993.]

*Hubert W. Alexander,* for appellant/cross-appellee.

*Hoofman & Bingham, P.A.,* by: *Clifton H. Hoofman* and *George E. Pike, Jr.,* for appellee/cross-appellant.

DONALD L. CORBIN, Justice. Barbara Box appeals from a divorce decree and judgment entered by the Pulaski Chancery Court. She asserts only one point of error. John T. Box cross-appeals, asserting two points of error. As all assignments of error concern the classification and division of property, resolution of this appeal requires our interpretation of our division of property statute, Ark. Code Ann. § 9-12-315 (Supp. 1991). Our jurisdiction is pursuant to Ark. Sup. Ct. R. 29(1)(c). We reverse and remand on direct appeal and affirm on cross-appeal.

The parties married on March 25, 1983. They separated on May 22, 1990, and appellant filed for divorce on May 9, 1991. Appellee counterclaimed for divorce on July 2, 1991.

The evidence presented at trial reveals that, prior to the parties' marriage, appellee had acquired two parcels of real estate. He owned a 100-acre farm in Romance, Arkansas. Purchase-money mortgage payments on the farm are $190.83 per month. He also owned a 38-acre homestead in Jacksonville, Arkansas, which was given to him free of any debt by his parents. In September 1980, the homestead was mortgaged for $30,000.00, to be paid over 120 months at $465.90 per month. On the date the parties married, appellee owed $27,638.78 on this mortgage; during the marriage, the $27,638.78 balance on the mortgage was paid in full. Appellee stated that he borrowed the $30,000.00 to pay the property settlement in his prior marriage. In June 1985, the homestead was mortgaged for $2,000.00, to be paid over 24 months at $94.61 per month. This mortgage was paid in full during the marriage. Appellee stated that he borrowed the $2,000.00 to help purchase a car for one of appellant's daughters. A court-appointed appraiser valued the homestead at $85,000.00

as of the date the parties married. The same court-appointed appraiser valued the homestead at $91,000.00 as of December 19, 1991.

Evidence presented at trial also reveals that, during the marriage, appellant was employed as a secretary for an insurance company earning $1,000.00 per month; appellee worked as a fireman for the civil service earning approximately $960.00 per month. During the first two and one-half years of their marriage, the parties and two of appellant's three daughters lived in a house rented to appellant. Appellant paid the rent and all expenses on the rent house while the parties lived there and made improvements to appellee's homestead. After the two and one-half years of living in the rent house while improving appellee's house, the parties and appellant's two daughters moved into appellee's house and continued to live there for approximately five and one-half years. During this time, appellant used her earnings to pay the telephone bills, gasoline bills, grocery bills, and insurance on appellee's house and all family vehicles; appellee used his salary to make the mortgage payments and utility bills on both his house and his farm. Appellant testified that over the course of the marriage, she spent a least $13,190.00 on improvements to appellee's house and for living expenses. She stated that the $13,190.00 was proceeds from the sale of a house she owned a one-half interest in prior to the parties' marriage.

Finding that the parties had lived separate and apart for more than eighteen months, the chancellor granted appellee an absolute divorce on those grounds effective March 27, 1992. A decree was entered on May 13, 1992, in which the chancellor found appellee to be the owner of the real properties he acquired prior to the marriage. The chancellor ordered that appellee would remain the owner of all real property owned by him prior to the marriage and that appellant would have no interest in his real property except as provided in the decree. After considering the court-ordered appraisals, the chancellor then found that certain improvements were made to appellee's house by the parties which caused the value of the house to increase by $6,000.00. The chancellor awarded appellant "$3,000.00 for one-half (1/2) of the increase in value of the home which resulted from the efforts of the parties." The decree also distributed the parties' personal property by ordering that the personalty should "remain the sole

property of the one in possession." There is little explanation of exactly what personalty was distributed. The decree also distributed part of appellee's civil service pension to appellant.

## DIRECT APPEAL
## REDUCTION IN MORTGAGE
## AS MARITAL PROPERTY

Appellant argues the chancellor erred by not considering evidence that during the parties' marriage, the indebtedness held against appellee's non-marital properties was greatly reduced through payments made with marital funds. Appellant argues, both below and on appeal, that section 9-12-315 permits the chancellor to award appellant one-half of the reduction in indebtedness, either as an increase in value of non-marital property, section 9-12-315(a)(2), or as a transformation of non-marital property into marital property through the investment of marital funds, section 9-12-315(a)(1)(A). Appellant claims the chancellor erred by not considering these sections of the statute when dividing the parties' property. We agree.

With respect to the division of property in a divorce case, we review the chancellor's findings of fact and affirm them unless they are clearly erroneous, or against the preponderance of the evidence; we review the division of property and affirm it unless it is clearly erroneous, or against the preponderance of evidence. *Bagwell* v. *Bagwell*, 282 Ark. 403, 668 S.W.2d 949 (1984); ARCP Rule 52.

In the present case, the chancellor's finding with respect to ownership of the homestead and farm are supported by the preponderance of the evidence. Appellee owned these properties prior to marrying appellant. Section 9-12-315(b)(1) therefore excepts these two properties from the definition of marital property. In other more affirmatively phrased words, these two properties are classified as non-marital properties. We cannot say the chancellor erred in ordering that appellee remain the sole owner of these properties.

However, the chancellor did err in failing to consider that marital property was used to pay some of the debt against the non-marital properties. Earnings acquired subsequent to marriage are classified as marital property. *Day* v. *Day*, 281 Ark. 261, 663 S.W.2d 719 (1984); Ark. Code Ann. § 9-12-315(b). In *Bagwell*, 282 Ark. 403, 668 S.W.2d 949, we stated that a

chancellor may find that a non-owning spouse is entitled to some benefit by reason of marital funds having been used to pay off debts on the owning spouse's non-marital property. We have also held that a non-owning spouse is entitled to some benefit when marital funds are used to purchase a home built on the owning spouse's non-marital lot. *Williford* v. *Williford*, 280 Ark. 71, 655 S.W.2d 398 (1983).

Section 9-12-315(a) gives a chancellor the discretion to divide equitably both marital and non-marital property after considering the stated factors. In fact, when considering the former property division statute, we have stated that a chancellor is given broad powers to distribute both non-marital and marital property to achieve an equitable division. *Williford*, 280 Ark. 71, 655 S.W.2d 398. The overriding purpose of the property division statute is to enable the court to make a division that is fair and equitable under the circumstances. *Canady* v. *Canady*, 290 Ark. 551, 721 S.W.2d 650 (1986).

There was evidence presented indicating marital funds were used to pay some of the debts against appellee's homestead and farm. This is relevant evidence for the trial court to consider when dividing the parties' marital and non-marital property. *See* Ark. Code Ann. § 9-12-315(a). *See also Bagwell*, 282 Ark. 403, 668 S.W.2d 949; *Williford*, 280 Ark. 71, 655 S.W.2d 398. We reverse the decree on this point and remand for consideration of this evidence.

CROSS-APPEAL
INCREASE IN VALUE TO NON-MARITAL
PROPERTY DUE TO IMPROVEMENTS;
DEBT FOR IMPROVEMENTS

For his first point on cross-appeal, appellee claims the chancellor erred in awarding appellant the $3,000.00, or one-half the $6,000.00 increase in value to his house from the labor and efforts of the parties' improvements to the house. He claims the chancellor erred further in making him responsible for the remainder of the $3,500.00 debt for the central heating and air unit added to his house during the marriage.

At trial, appellant presented evidence of improvements made to appellee's house during the marriage. This evidence was contested by appellee who characterized the improvements as changes. He also disputed that all the improvements were made

during the marriage, claiming that some were made prior to the marriage.

Appellant presented a list of improvements made and testified that during the marriage, the parties cleared the yard of excess building materials, debris, and approximately 30 trees; cleared the interior storage area of similar debris and finished it as a bedroom; replaced posts on front porch and added storm door; added baseboards, window frames and door frames throughout; removed paneling, patched sheetrock, and painted or wainscoted and papered walls throughout; replaced vinyl and sub-floor in kitchen; added dishwasher, Jenn-Air, stainless steel sink, ceramic tile and new Formica in kitchen; refinished cabinets in kitchen; installed new light fixtures in kitchen; installed ceiling fans throughout; installed new bathroom fixtures in both bathrooms; installed mini-blinds and carpet throughout; installed central heat and air unit; replaced shingles on roof; painted exterior wood; painted and shingled pump house; planted shrubs and trees; installed water lines and gas lines to connect with public utilities; laid foundation for addition of an attached three-car garage, utility room, and full bathroom.

Appellee specifically argues appellant did not meet her burden of proving that the $6,000.00 increase in value shown by the appraisals was caused by the alleged improvements. Appellee argues that the $6,000.00 increase is relatively small given the high rate of inflation and could have been caused by factors other than the improvements. He contends that an increase in value of non-marital property is classified as non-marital property pursuant to section 9-12-315(b)(5); and that the chancellor therefore erred in awarding appellant one-half of the increase in value of his home. The chancellor further compounded the error, argues appellee, by making him responsible for the debt on the improvements, namely the remainder of the $3,500.00 owed for the central heating and air unit.

As stated in the decree, the chancellor specifically found that the $6,000.00 increase in value reflected by the appraisals was caused by the improvements made to appellee's house. The chancellor also found that the increase resulted from the parties' efforts and therefore awarded appellant one-half of the increase.

Although section 9-12-315(b)(5) classifies an increase in value of non-marital property as non-marital property, it is

appropriate for a chancellor to consider the non-owning spouse's contributions toward the increase in value when dividing the property. *See* Ark. Code Ann. § 9-12-315(a). Given the evidence presented as to the improvements made by both parties, as well as the increase in value reflected in the appraisals, we cannot say the chancellor's findings and division of property were clearly erroneous.

As for the chancellor's decision placing full responsibility for the debt of the central heat and air unit on appellee, we note that although the division of debts is not addressed in section 9-12-315, the chancellor has authority to consider the allocation of debt in deciding a divorce case. In *Hackett* v. *Hackett*, 278 Ark. 82, 85, 643 S.W.2d 560, 562 (1982), we stated that "[i]ndeed it would be unrealistic for a chancellor to refuse to consider the debts of the parties in deciding a divorce case."

At trial, the chancellor stated the following:

> It's also the finding of the court that he [appellee] will be totally responsible for the debt on the air conditioner and that the air conditioner has remained in the house.

> And just as I am not dividing all of the money that went into the house between the parties, I'm also not going to divide what remains in the house as being a debt. I mean, in other words, you can't have it both ways. We're not putting all the money that went into the house and saying that she gets that back; we're also not going to say that she has to pay any part of the debt with something that is remaining with the house.

The chancellor specifically found that the unit was an improvement to the house and that the unit would remain in the house, which is appellee's non-marital property. We are well aware that appellee disputes the finding that the unit is an improvement to his house. However, based on the appraisals and the evidence of the improvements, we cannot say the chancellor clearly erred in making such a finding nor by placing full responsibility on appellee for the $3,500.00 debt to finance the

improvement to his non-marital property.

## CROSS-APPEAL
## INEQUITABLE DISTRIBUTION OF
## APPELLEE'S PENSION

As his second point on cross-appeal, appellee argues the chancellor made an inequitable division of marital property when she awarded appellant part of appellee's civil service retirement benefits. To be equitable, he argues the chancellor should have either awarded him part of appellant's social security benefits or should not have awarded appellant part of his civil service benefits.

Appellee testified that he had a vested pension with the civil service, that he did not pay any social security taxes, and that he was not entitled to receive any social security benefits. He stated that he had worked for civil service almost 25 years and that if he continued to work there until he reached age 50, he could draw his civil service benefits then. Otherwise, he could draw his civil service benefits when he reached age 62. He also stated that his civil service benefits had a cash value of approximately $14,000.00, explaining that he could be paid the $14,000.00 if he were to quit working there immediately. He also stated the total amount he contributed into his civil service benefits plan during his marriage to appellant was approximately $14,000.00.

There was no evidence presented relating to appellant and whether she was entitled to receive social security retirement benefits. Likewise, there was no evidence presented as to whether she had a private pension or any retirement benefits whatsoever.

The chancellor stated she was aware that appellee's pension could be in lieu of social security benefits. However, she also stated that she was going to treat appellee's pension just as she would any other. Accordingly, the decree states as follows:

> Therefore, it is found that plaintiff [appellant] is entitled to participate in the retirement benefits of said plan to the extent that one-half (1/2) of the benefit which resulted in contributions made to the plan between March 25, 1983, and March 27, 1992. In the alternative, counter-claimant [appellee] shall have the right to pay $7,000.00 to plaintiff [appellant], which amount represents one-half

(1/2) of the present cash value of the increase to the plan during the course of the marriage.

At trial, the chancellor stated that appellee could have the weekend and two working days in which to produce a reason she should treat appellee's civil service pension differently than any other pension. The chancellor indicated if she did not receive any such reason within the given time, she would let her ruling stand. The record does not indicate that appellee ever presented the chancellor with the requested information.

■ Appellant argues that appellee has waived this argument on appeal by his failure to present the trial court with the requested information. We agree. Our research indicates that Congress has spoken in this area. 42 U.S.C. §§ 407, 659, 662(c) (1988) (indicating that social security benefits are not assignable, not subject to legal process, and not to be divided by a state court considering property division in a divorce case); 5 U.S.C. § 8345(j)(1) (1988) (providing that civil service retirement benefits may be paid directly to a person other than the employee pursuant to a state court order, divorce decree, or order of property settlement). Despite the fact that law exists in this area, and that appellee was given a gracious opportunity to present an objection and any supporting authority to the trial court, he did not do so. Accordingly, we hold appellee has waived this argument on cross-appeal and we do not address it.

The decree is reversed and remanded on direct appeal and affirmed on cross-appeal.