
Cite as 2014 Ark. 96

# SUPREME COURT OF ARKANSAS

No. CV–13–596

| | | |
|---|---|---|
| CHARLES JONES | | **Opinion Delivered** February 27, 2014 |
| | APPELLANT | |
| | | APPEAL FROM THE INDEPENDENCE COUNTY CIRCUIT COURT [NO. DR–2011–369-2] |
| V. | | |
| MYRA JONES | | |
| | APPELLEE | HONORABLE ADAM HARKEY, JUDGE |
| | | <u>AFFIRMED; COURT OF APPEALS' OPINION VACATED.</u> |

**COURTNEY HUDSON GOODSON, Associate Justice**

Appellant Charles Jones appeals the decree entered by the Independence County Circuit Court divorcing him from appellee Myra Jones. For reversal, Charles contests the circuit court's division of property in four respects. He contends that the circuit court erred (1) by not awarding him an interest in a home that Myra purchased before the marriage; (2) by dividing their vehicles unequally; (3) by giving Myra an interest in his life-insurance policies; and (4) by not imposing a constructive trust for the return of land in which Charles had deeded an interest to Myra. We granted Charles's petition for review of the opinion issued by the Arkansas Court of Appeals that affirmed the circuit court's decision. *Jones v. Jones*, 2013 Ark. App. 391, ___ S.W.3d ___. When this court grants a petition to review a decision by the court of appeals, we treat the appeal as if it had been originally filed in this court. *Singletary v. Singletary*, 2013 Ark. 506, ___ S.W.3d ___. We affirm.

SLIP OPINION

*Factual Background*

The parties in this case married in June 1992. They had no children together. On July 13, 2011, Myra filed a complaint for divorce on the ground of general indignities. Charles answered the complaint and filed a counterclaim, also seeking dissolution of the marriage. Ultimately, Charles did not contest the divorce, and the parties' dispute centered on the division of property and the allocation of marital debt.[1]

As reflected by the record, Charles received training in real estate and home inspection during the marriage. In 1999, he established his own heating-and-air business. In 2010, Charles's monthly deposits from the business averaged slightly over $8,000 per month. From that amount, Charles estimated that he earned a profit of thirty to forty percent. Their tax return for that year showed an adjusted gross income from the business of $21,140. Before marrying Charles, Myra was employed at Harvest Foods for ten years, and after the marriage, she worked several years for a doctor as a receptionist and medical transcriptionist. Starting in 2002, she operated an antique shop that was located in a building owned by Charles's father. This business was not profitable.

During the marriage, the parties resided in a home on Kyler Road in Batesville that Myra had owned since 1978. Also before the marriage, Charles had acquired property on Chinn Springs Road near Pfeiffer that was undeveloped and consisted of approximately thirty-five acres. In 1997, the parties executed a deed conveying this property to each other as

---

[1]Myra also sought alimony. Although the circuit court granted alimony on a temporary basis, the circuit court declined to make the award permanent. Myra has not pursued a cross-appeal of that decision.



husband and wife. The parties also owned three vehicles. Charles gave Myra a used Mercedes Benz as an anniversary present in 2009. Charles had two trucks that he used personally and in his business. At trial, Myra produced evidence that five policies insured Charles's life.

The record also reveals that the parties amassed a fair amount of debt. The home on Kyler Road stood as security for personal loans that they had obtained during the marriage. Myra said that they had taken out as many as seven different loans on the property. At the time of the divorce, there was both a mortgage and a revolving line of credit that were secured by the home in the total amount of $59,246. According to the testimony, the loan proceeds were used for such things as living expenses, Myra's dental work, health-care costs, Charles's training and his business, and the purchase of miniature horses and fencing for those animals. In addition, the parties owed approximately $22,000 on the Mercedes and $8,900 on one of the work trucks. Charles and Myra also accumulated considerable credit-card debt. Myra's credit card for the antique store had a balance of $11,121.50. Charles owed $15,149 on a credit card for the heating-and-air business, and he had another card with a balance of $3,248.50.

In the decree, the circuit court ruled that the home on Kyler Road was Myra's separate property, and the court declined to award Charles an interest in the home. The court awarded Myra the Mercedes and gave Charles the two trucks. The circuit court also ruled that the parties were to equally divide the cash values of the insurance policies. The court found that the land on Chinn Springs Road was marital property and ordered the sale of the



land, as well as the inventory of the antique shop. The court also accepted the parties' joint exhibit listing items of personal property, which identified some as marital and others as separate property. The court ordered the items designated as marital property to be sold. The circuit court then directed that the proceeds from the sale of the marital property be used to retire the parties' debts. The proceeds were to be applied first to the debt on the Kyler Road property, with the remainder used to pay the other debts in the following order: the note on the Mercedes; Myra's credit card; Charles's truck note; and then Charles's credit cards. Any remaining proceeds of the sale were to be divided equally between the parties. In addition, the circuit court did not award Myra an interest in the heating-and-air business. Charles also received the miniature horses.

*Standard of Review*

With respect to the division of property in a divorce case, we review the circuit court's findings of fact and affirm them unless they are clearly erroneous or against the preponderance of the evidence. *Brown v. Brown*, 373 Ark. 333, 284 S.W.3d 17 (2008). A finding is clearly erroneous when the reviewing court, on the entire evidence, is left with the definite and firm conviction that a mistake has been committed. *Conlee v. Conlee*, 370 Ark. 89, 257 S.W.3d 543 (2007).

*Kyler Road Home*

Charles first argues on appeal that the circuit court erred by not awarding him an interest in the home on Kyler Road. Although he acknowledges that Myra had acquired this property prior to the marriage, he asserts that he is entitled to an interest in the home because



marital funds were used to reduce the debt on the property and to make improvements.

Our definition of marital property excludes property acquired before the marriage. Ark. Code Ann. § 9-12-315(b)(1) (Repl. 2009). However, we have long held that a non-owning spouse is entitled to some benefit when marital funds have been expended to improve or reduce the debt on the other spouse's nonmarital property. *See Box v. Box*, 312 Ark. 550, 851 S.W.2d 437 (1993) (holding that circuit court erred in failing to consider that marital property, in the form of marital earnings, was used to pay debt against nonmarital property); *Bagwell v. Bagwell*, 282 Ark. 403, 668 S.W.2d 949 (1984) (holding that a trial court may find that a non-owning spouse is entitled to some benefit by reason of marital funds having been used to pay off debts on the owning spouse's nonmarital property); *Williford v. Williford*, 280 Ark. 71, 655 S.W.2d 398 (1983) (holding that a non-owning spouse is entitled to some benefit when marital funds are used to improve nonmarital property). Although a non-owing spouse may be entitled to an interest in the other spouse's nonmarital property, the nonmarital property itself is not transformed into marital property by virtue of the expenditure of marital funds to reduce debt or to make improvements. *Farrell v. Farrell*, 365 Ark. 465, 231 S.W.3d 619 (2006).

The evidence presented in this case shows that insurance proceeds were used to install new flooring throughout the house and to replace the roof. However, Charles offered no testimony to establish the present fair market value of the home, nor was there any evidence to show any increase in value of the home resulting from the improvements. A spouse seeking to have an increase in value of nonmarital property declared marital has the burden



of proving marital contributions and an increase in value. *Id*. Charles clearly failed in this burden, and thus, we cannot conclude that the circuit court erred.

The testimony also reflects that Charles's income was used to pay the loans encumbering the home. Even so, the testimony indicates that Myra owed only $16,000 on the home when the parties married and that the debt more than tripled during the marriage to the sum of $59,000. Although marital funds were used to service the debt, Charles has not demonstrated that these contributions resulted in an appreciable increase in equity or in the value of the home. Given the failure of proof, we are not able to conclude that the circuit court erred by awarding Charles no financial benefit in the home.

*Vehicles*

Charles next argues that the circuit court erred in its division of the marital vehicles. He contends that the court's decision amounts to an unequal division of property because the Mercedes was worth $22,000 while the two trucks had a combined value of $13,000. We have long recognized that circuit courts, in traditional equity cases, have broad powers to distribute the property in order to achieve an equitable division. *Russell v. Russell*, 2013 Ark. 372, ___ S.W.3d ___. The circuit court is vested with a measure of flexibility in apportioning the total assets held in the marital estate upon divorce, and the critical inquiry is how the total assets are divided. *See Canady v. Canady*, 290 Ark. 551, 721 S.W.2d 650 (1986). The overriding purpose of the property-division statute is to enable the court to make a division that is fair and equitable under the circumstances. *Id*.

This court has observed that marital property cannot always be divided exactly equally



and in kind. *See Bagwell*, *supra*. Stated another way by our court of appeals, the property-division statute does not compel mathematical precision in the distribution of property; it simply requires that marital property be distributed equitably. *See*, *e.g.*, *McCormick v. McCormick*, 2012 Ark. App. 318, ___ S.W.3d ___; *Coatney v. Coatney*, 2010 Ark. App. 262, 377 S.W.3d 381. We will not substitute our judgment on appeal as to the exact interest each party should have but will decide only whether the order is clearly wrong. *Pinkston v. Pinkston*, 278 Ark. 233, 644 S.W.2d 930 (1983). Here, the circuit court gave Myra the vehicle that she drove. The court awarded Charles the two trucks that he used in the heating-and-air business. We note that Myra gained no interest in the business upon the divorce, and the court declined to award her alimony. In addition, Charles received the miniature horses. Although the division of the vehicles was not precise, Charles has failed to demonstrate that the circuit court's decision is clearly wrong in light of the overall circumstances of this case. Therefore, we affirm on this point.

*Life-Insurance Policies*

Under this point, Charles asserts that the circuit court's decision to equally divide the cash value of the life-insurance policies was clearly erroneous. Prior to trial, Myra propounded interrogatories to Charles. In them, she asked him to identify all policies insuring his life. Charles answered that there were none. However, at trial Myra produced evidence revealing the existence of five life-insurance policies. Charles testified that his father had purchased the policies when he was a child and that his father had transferred ownership of the policies to him in the past two years. He said that he did not know the cash values of any



of the policies, and he recalled that two of them had been transferred into Myra's name the previous year. Charles also acknowledged that he had paid premiums with marital funds. Charles's father testified that he had purchased the policies and that some were structured to pay dividends. He said that Charles did not know about the insurance policies until two years ago.

Charles is correct that property received by gift is excluded from the definition of marital property. Ark. Code Ann. § 9-12-315(b)(1). However, Charles testified that two of the policies had been gifted to Myra and that marital funds were used to pay premiums. The record does not show the current value of all of the policies. Thus, it is impossible to determine whether this was or was not an equitable division. The burden is on the appellant to bring up a record sufficient to demonstrate that the trial court was in error. *Young v. Young*, 288 Ark. 33, 701 S.W.2d 369 (1986) (affirming decree where there was insufficient information in the record to show that the circuit court's division of marital assets was in error). Charles has failed to meet this burden, and thus we must affirm.

*Constructive Trust*

For his final point on appeal, Charles contends that the circuit court erred by not imposing a constructive trust in order for the Chinn Road property to be his sole and separate property. He argues that their marriage created a confidential relationship and that he executed the deed conveying the property on Chinn Road to them as husband and wife based on Myra's agreement that she would deed to him a similar interest in the home on Kyler Road. While Charles offered testimony to that effect, Myra denied that she had promised to

give Charles an interest in the home. She stated that they had never discussed it, although she did agree that she wanted her name on the Chinn Springs Road property because the loans were secured by her home.

To bring about a constructive trust, an oral promise must be falsely given, with no intention of performance, so that it amounts to a misrepresentation of fact. *Robertson v. Robertson*, 229 Ark. 649, 317 S.W.2d 272 (1958). A constructive trust will be imposed if it is shown by clear and convincing evidence that the grantee's promise was intentionally fraudulent or that the grantor and the grantee were in a confidential relation. *Walker v. Biddle*, 225 Ark. 654, 284 S.W.2d 840 (1956).

In our review, we give due deference to the circuit court's superior position to determine the credibility of the witnesses and the weight to be accorded to their testimony. *Hall v. Hall*, 2013 Ark. 330, ___ S.W.3d ___. Here, the testimony as to whether Myra promised Charles to place his name on the property was conflicting. The circuit court resolved that conflict in Myra's favor. Therefore, we can find no error in the circuit court's decision not to impose a constructive trust.

Affirmed; court of appeals' opinion vacated.

*Ballard & Ballard, P.A.*, by: *Andrew D. Ballard*, for appellant.

*James Law Firm*, by: *William O. "Bill" James, Jr.* and *Lee D. Short*, for appellee.