Cite as 2019 Ark. App. 467

# ARKANSAS COURT OF APPEALS
DIVISION I
**No.** CV-18-743

|  |  |
|---|---|
| ELWYN PERSER<br><br>APPELLANT<br><br>V.<br><br>WHITNEY PERSER<br><br>APPELLEE | **Opinion Delivered:** October 23, 2019<br><br>APPEAL FROM THE PULASKI COUNTY CIRCUIT COURT, SIXTEENTH DIVISION<br>[NO. 60DR-16-3859]<br><br>HONORABLE MORGAN E. WELCH, JUDGE<br><br>AFFIRMED ON DIRECT APPEAL; AFFIRMED ON CROSS-APPEAL |

**RITA W. GRUBER, Chief Judge**

Elwyn Perser appeals from a divorce decree entered May 18, 2018, ending his twelve-year marriage to Whitney Perser. He argues four points on appeal: (1) the circuit court erred by awarding Whitney $52,000 from his separate nonmarital residence; (2) the circuit court erred by awarding Whitney $100,000 from his separate nonmarital medical practice; (3) the circuit court's awards of child support and alimony should be reversed due to the court's use of incorrect net income; and (4) the circuit court's award of alimony is clear error because the amount is unreasonable. Whitney argues on cross-appeal that the circuit court erred in not awarding her half of the value of the parties' marital residence. Elwyn filed a motion to dismiss her cross-appeal, which this court passed to the panel to be heard on submission. Having conducted a de novo review, we affirm on direct appeal. We deny Elwyn's motion to dismiss and also affirm the cross-appeal.

The parties married on February 10, 2006. Throughout their marriage, Elwyn practiced medicine at, and was the sole owner of, Edwin N. Barron, Jr., MD, PA, d/b/a Office Park Family Practice, which Elwyn had purchased from Whitney's father, Dr. Barron, in 2003. Whitney, her father, and her mother continued to work in the business after Elwyn's purchase and during the parties' marriage. Whitney, who does not have a college degree but has attended several years of college, worked at the business since 1999 and was the office manager during the parties' marriage. She had never worked anywhere else.

When the parties married, Whitney had an adopted daughter, AP—born January 10, 2001—whom Elwyn also adopted after he and Whitney married. The parties have no other children. AP has emotional deficiencies, has been diagnosed on the autism spectrum, and was undergoing inpatient treatment at Youth Home at the time of the divorce hearing. Incidents with AP include sexting strangers, vandalizing the house, running away, and stealing money from Whitney's purse. Whitney was diagnosed with breast cancer in March 2016, had a bilateral mastectomy, underwent six rounds of chemotherapy, and had reconstructive surgery throughout the spring and summer of 2016. Her final reconstructive surgery occurred in October 2016. She testified that because of the type of cancer she had, her physicians had recommended additional surgery to remove her ovaries, which she had not scheduled at the time of the hearing.

Elwyn filed a complaint for divorce against Whitney in May 2016, which he dismissed several months later. The parties got into a physical and verbal altercation on October 1, 2016. On October 3, Elwyn filed another complaint for divorce and fired

Whitney from the business. Whitney and AP lived with Whitney's parents for a month and then moved back into the marital residence in November 2016. Elwyn stayed at the Office Park Family Practice during the pendency of the divorce.

After a hearing, the circuit court entered a temporary order on February 16, 2017, in which it ordered Elwyn to pay child support of $1816 per month based on net annual income of $150,000 and to pay all other household expenses. Pursuant to Elwyn's motion to reduce support, the court held another hearing and entered a temporary order on March 7, 2018, reducing his child-support obligation to $1566 per month based on net income of $130,000 per year.

On May 18, 2018, after a final hearing on March 28, the court entered a final decree of divorce. Relevant to this appeal, the court awarded sole custody of AP to Whitney with supervised visitation to Elwyn as recommended by the attorney ad litem. Elwyn was ordered to continue paying child support in the amount of $1566 based on monthly net income of $10,498.18. The court found that the parties' marital residence on Van Lee Drive was Elwyn's nonmarital separate property but found that Whitney had made contributions of $52,000 toward the purchase of the house. The court ordered Elwyn to reimburse her for that amount with interest within 180 days of the decree, giving Whitney a lien on the home until it was paid. The court also ordered Elwyn to pay Whitney rehabilitative alimony of $2000 per month for seven years based upon the disparity in income of the parties, the length of the marriage, and the health of the parties. In awarding alimony, the court was specifically "mindful" that Elwyn retained the marital home without a mortgage payment and that Whitney would be incurring an additional monthly housing expense. Finally, the

3

court ordered Elwyn to pay Whitney $100,000 as her marital portion of his medical practice. Elwyn filed this appeal from the court's decree. Whitney filed a cross–appeal.

I. *Medical Practice*

We turn first to Elwyn's argument on appeal that the circuit court erred by awarding Whitney $100,000 from his separate nonmarital medical practice. Specifically, he argues that an equitable distribution of the business was improper because the medical practice carries no goodwill independent of his name. He also contends that it was improper and unreasonable because Whitney received other significant assets making it inequitable to award her part of his medical practice.[1] These are the circuit court's findings regarding the medical practice:

> The Court finds [Elwyn] is one hundred percent (100%) owner (stockholder) of Edwin Barron, Jr., MD PA, d/b/a Office Park Family Practice and that he purchased the practice prior to the parties' marriage. The court further finds that much of the goodwill of the practice was intertwined with the 'Barron' name and that [Whitney's] father remained with the practice for some time during the marriage, working with both [Elwyn] and [Whitney](who was an employee). The Court finds the practice had a goodwill value "independent" of [Elwyn].
>
> The court further finds from the testimony and exhibits demonstrate that, during the marriage, [Elwyn] paid debt on the practice with marital funds and that the business has assets, including loans to stockholder, retained earnings, office equipment and accounts receivable which are to be considered in a divorce proceeding.
>
> This Court is given broad powers to distribute both marital and nonmarital property to achieve an equitable division. *Box v. Box*, 312 Ark. 550 (1993); [t]he Court acknowledges that all nonmarital property shall be returned to the party who owned it prior to the marriage unless the court shall make some other division it deems equitable. See Ark. Code Ann. § 9–12–315(a)(1)(B)(2) (Repl. 1998). The trial court may find that a non-owning spouse is entitled to some benefit by reason of

---

[1]Elwyn and Whitney each received $430,467.09 from the division of marital retirement and investment accounts.

4

marital funds having been used to pay off debts on the owning spouse's property. *Fell v. Fell, supra.*

As the Arkansas Appellate Courts have stated, our property division statute does not require mathematical precision in property division, but only that property be distributed equitably. *Hoover v. Hoover*, 70 Ark. App. 215, 16 S.W.3d 560 (2000). The evidence is clear in this case that [Whitney] worked in [Elwyn's] medical practice during the marriage and even before the marriage and that she contributed to the value of the business. Also, the testimony reflects that [Elwyn] used marital funds to pay the amount owed for the medical practice.

The circuit court is given broad powers to distribute both marital and nonmarital property to achieve an equitable division, and the overriding purpose of the property-division statute is to enable the court to make a division that is fair and equitable. *Steeland v. Steeland*, 2018 Ark. App. 551, at 8, 562 S.W.3d 269, 274. We review division-of-marital-property cases de novo, but we will not reverse the circuit court's findings of fact unless they are clearly erroneous or against the preponderance of the evidence. *See Hernandez v. Hernandez*, 371 Ark. 323, 327, 265 S.W.3d 746, 749 (2007). A finding is clearly erroneous when the reviewing court, on the entire evidence, is left with the definite and firm conviction that a mistake has been made. *Kelly v. Kelly*, 2014 Ark. 543, at 5, 453 S.W.3d 655, 660.

Here, although the court found that the medical practice had a goodwill value independent of Elwyn, it assigned no particular amount to goodwill, and it does not appear that the court based its $100,000 award on this value. Goodwill is merely one of the assets of an ongoing business, and no evidence was introduced in this case to demonstrate the value of the goodwill of Elwyn's medical practice. There was, however, other evidence introduced to demonstrate the value of the business. The circuit court found that the evidence demonstrated Elwyn had paid debt on the practice with marital funds and that the

5

practice had assets including loans to stockholder, office equipment, and accounts receivable in addition to retained earnings. The court also recognized that Whitney had worked in the business the entire duration of the marriage and had contributed to the value of the business. It found that Whitney was entitled to some benefit, noted that mathematical precision was not required in property division, and used its "broad powers" to distribute the property equitably.

Whitney testified at trial that Elwyn used marital funds to pay the amount owed for the medical practice. Both parties agreed that Whitney had worked for the medical practice before the parties were married and during the parties' entire marriage as the office manager. Whitney testified and presented a report and balance sheet from March 2018 showing accounts receivable of $96,717.85 and retained earnings of $106,347.43. The balance sheets from 2015, 2016, 2017, and March 2018 also included as an asset of the business a loan to Elwyn of $117,012.92. After a de novo review of the record in this case, we cannot say that the circuit court's decision was clearly erroneous. *Kelly*, 2014 Ark. 543, at 6, 453 S.W.3d at 660. Accordingly, we affirm its award.

## II. *Elwyn's Net Income*

Next, Elwyn argues that the circuit court's awards of child support and spousal support should be reversed because the court erred in setting his net income at $130,000.[2] We will address alimony in connection with Elwyn's next point on appeal and turn here to the court's child-support award. We review child-support cases de novo on the record.

---

[2]The circuit court based its child-support award of $1556 on a monthly net income of $10,498.18, or an annual income of $125,978.16.

*Paschal v. Paschal*, 82 Ark. App. 455, 117 S.W.3d 650 (2003). It is the ultimate task of the circuit court to determine the expendable income of a child-support payor. *Cole v. Cole*, 89 Ark. App. 134, 142, 201 S.W.3d 21, 26 (2005). This income may differ from income for tax purposes. *Id.* When the amount of child support is at issue, we will not reverse the circuit court's determination absent an abuse of discretion. *Grimsley v. Drewyor*, 2019 Ark. App. 218, at 19, 575 S.W.3d 636, 647.

The circuit court set the amount of child support at $1566 per month.[3] The circuit court based its award on the chart amount for a monthly net income of $10,498.18, or an annual income of $125,978.16. The court specifically stated that it had determined Elwyn's net income pursuant to Administrative Order No. 10, his earning potential as a medical doctor, and the fact that his income "in his own practice coincidentally decreased from averaging $250,000 per year to $110,000 in 2017, during the time of this divorce proceeding."

Elwyn argues that the circuit court was required to rely on his 2016 and 2017 tax returns—and his testimony that he received no income other than what was reflected on those returns—in determining his income for child-support purposes. His 2016 tax return shows a total income of $157,813, and his 2017 tax return shows a total income of $121,915. He argues that after his taxes and AP's health insurance were paid, he had an average net income between the two years of $87,255.37 and should pay child support of $1,031.69.

---

[3]This was what Elwyn had been paying since the temporary order on March 7, 2018, reduced his monthly obligation of $1816—based on net annual income of $150,000—following a hearing on Elwyn's motion to reduce child support.

Whitney and Elwyn both testified that Elwyn alone determined his annual salary and year-end bonus. Whitney introduced tax returns from 2013, 2014, and 2015 showing Elwyn's income was $243,536, $251,972, and $254,875, respectively. She testified, and Elwyn confirmed in his testimony, that Elwyn consistently took a biweekly salary of $10,000 in both 2014 and 2015. In 2016, the year Elwyn filed for divorce, his biweekly salary payments began to vary between $3,000 and $7,000. Elwyn's income dropped in 2016 almost 40 percent from what it had been for the three previous years. His reported income for 2017 was less than half of what it had been for those years. Elwyn blamed the significant drop in his income on Dr. Barron's retirement in 2017, a dramatic decrease in his patient load for which he had no explanation, and a drop in Medicare reimbursement. He denied that it had anything to do with his filing for divorce.

Contrary to Elwyn's argument, the court did not disregard Elwyn's 2016 and 2017 tax returns, nor did the court disregard or deviate from the amount set by the child-support chart. What the court did was disbelieve Elwyn's explanation for why he was earning half of what he had earned for the three or more years before he filed for divorce. Elwyn owned his medical practice and was in sole control of his salary. The court did not believe that Elwyn's tax returns showed the correct amount of his earnings. A parent may not manipulate the amount of earned income to the detriment of his or her child. *See, e.g., Grady v. Grady*, 295 Ark. 94, 747 S.W.2d 77 (1988). Child support is an obligation owed to the child, and even in the absence of a court order requiring a parent to support his or her minor child, a parent continues to have a legal and moral duty to do so. *McGee v. McGee*, 100 Ark. App. 1, 6, 262 S.W.3d 622, 626 (2007). Arkansas Code Annotated section 9–12–312(a) (Repl.

8

2015) directs a court to make an order "concerning the care of the children" that is "reasonable from the circumstances of the parties and the nature of the case." *Grimsley*, 2019 Ark. App. 218, at 19, 575 S.W.3d at 647. Further, if a payor is working below his or her full earning capacity, the court may attribute income for purposes of calculating support. *Guthrie v. Guthrie*, 2015 Ark. App. 108, at 10, 455 S.W.3d 839, 846. Finally, determining the credibility of the witnesses is a task for the circuit court, and we will not second-guess it on appeal. *Farrell v. Farrell*, 365 Ark. 465, 469, 231 S.W.3d 619, 622 (2006). We hold that the circuit court did not abuse its discretion by using an annual net income of $125,978 in calculating Elwyn's child-support obligation.

### III. *Alimony*

Elwyn also challenges the court's alimony award as unreasonable due to his inability to pay. Arkansas Code Annotated section 9-12-312(a) states that the circuit court may enter an order concerning alimony that is "reasonable from the circumstances of the parties and the nature of the case." The purpose of alimony is to rectify the economic imbalance in earning power and standard of living in light of the particular facts in each case, and the primary factors to be considered in determining whether to award alimony are the financial need of one spouse and the other spouse's ability to pay. *Foster v. Foster*, 2016 Ark. 456, at 9, 506 S.W.3d 808, 814–15. The court should also consider the following secondary factors: (1) the financial circumstances of both parties; (2) the amount and nature of the income, both current and anticipated, of both parties; (3) the extent and nature of the resources and assets of each of the parties; and (4) the earning ability and capacity of both parties. *Kuchmas v. Kuchmas*, 368 Ark. 43, 45–46, 243 S.W.3d 270, 271–72 (2006). We will not reverse a

9

circuit court's decision regarding an award of alimony absent an abuse of discretion. *Craig v. Craig*, 2010 Ark. App. 718, at 5, 379 S.W.3d 590, 593.

Here, the court awarded Whitney alimony of $2000 per month for seven years. The court specifically recognized the disparity between the parties' incomes, the fact that Whitney had worked in Elwyn's business the entire length of the marriage, and the health of the parties. Before the parties separated, Elwyn earned approximately $250,000 annually while Whitney earned approximately $30,000 annually. Even Elwyn's self-stated monthly net income of $7271—less than half of his net income for the years before the parties' separation—far surpasses what Whitney is likely to earn in the immediate future. Whitney does not have a college degree and has never worked anywhere other than at the medical practice. Whitney testified that since Elwyn fired her in October 2016, she has been unable to obtain full-time work because of her health and her obligation to care for AP, who has severe emotional issues and cannot be left at home without supervision. She testified that she had found part-time work, some of which she is able to do at home, making $14.50 per hour. We hold that the court's award of alimony was not an abuse of discretion.

IV. *Elwyn's Nonmarital Residence*

Finally, Elwyn argues that the circuit court erred by ordering him to pay Whitney $52,000 for her contribution to his separate nonmarital property, the home where the parties lived during their marriage. Because this property is also the subject of Whitney's cross-appeal, we will address Elwyn's point on appeal and Whitney's cross-appeal together. Before we do, we consider Elwyn's motion to dismiss the cross-appeal.

V. *Motion to Dismiss Cross-Appeal*

The relevant dates are these. The divorce decree was entered on May 18, 2018. Elwyn filed his notice of appeal on June 14, and Whitney received the notice that same day through electronic filing. On June 27, Whitney filed a notice of cross-appeal. Elwyn filed his brief with this court on October 26. Whitney's brief was due on November 25. Whitney requested and was granted extensions of time to file her brief until January 16, 2019. On January 16, Whitney filed her appellee's brief, which included her cross-appeal.

Elwyn contends that we should dismiss the cross-appeal for three reasons: (1) Whitney waived the right to cross-appeal because she voluntarily performed in compliance with the circuit court's judgment by moving out of the home within sixty days as ordered; (2) the cross-appeal brief was filed after the due date of November 25, 2018, and Whitney never requested an extension of time to file her brief on cross-appeal; and (3) Whitney's notice of cross-appeal was untimely.

We turn first to Elwyn's argument that Whitney waived her right to cross-appeal because she complied with the court's order to move out of Elwyn's separate nonmarital property within sixty days of the decree. Elwyn has misstated Whitney's argument on cross-appeal. Whitney is not asserting any ownership to the residence or arguing that the residence is marital property. She is not contending that she should be allowed to occupy the home. Her argument on cross-appeal is that the circuit court erred by not paying her an equitable amount of the residence because the debt on the home was paid almost entirely with marital funds while the parties were married. Whitney did not waive her right to cross-appeal.

Second, Whitney requested and was granted extensions by this court to file her brief on January 16, 2019, which she did. This court did not set a separate briefing schedule for the cross-appeal. Pursuant to Rule 4-4(c) of the Arkansas Rules of the Supreme Court and Court of Appeals, appellees address their issues on cross-appeal in the appellee's brief. The rule authorizes thirty pages to respond to appellant's issues and thirty pages to address the cross-appeal. Ark. Sup. Ct. R. 4-4(c) (2018). Whitney's brief on cross-appeal was timely.

Finally, Elwyn argues that we have no jurisdiction over this appeal because Whitney's notice of cross-appeal was not timely. The timely filing of a notice is jurisdictional, both on appeal and cross-appeal. *Yellow Cab Co. v. Sanders*, 250 Ark. 418, 423, 465 S.W.2d 324, 327 (1971). Rule 4 of the Arkansas Rules of Appellate Procedure–Civil governs the time for filing notices of appeal and cross-appeal:

> **(a) Time for Filing Notice of Appeal.** Except as otherwise provided in subdivisions (b) and (c) of this rule, a notice of appeal shall be filed within thirty (30) days from the entry of the judgment, decree or order appealed from. *A notice of cross-appeal shall be filed within ten (10) days after receipt of the notice of appeal, except that in no event shall a cross-appellant have less than thirty (30) days from the entry of the judgment, decree or order within which to file a notice of cross-appeal.* A notice of appeal filed after the circuit court announces a decision but before the entry of the judgment, decree, or order shall be treated as filed on the day after the judgment, decree, or order is entered.
>
> **(b) Extension of Time for Filing Notice of Appeal.**
>
> (1) Upon timely filing in the circuit court of a motion for judgment notwithstanding the verdict under Rule 50(b) of the Arkansas Rules of Civil Procedure, a motion to amend the court's findings of fact or to make additional findings under Rule 52(b), a motion for a new trial under Rule 59(a), or any other motion to vacate, alter, or amend the judgment made no later than 10 days after entry of judgment, the time for filing a notice of appeal shall be extended for all parties. The notice of appeal shall be filed within thirty (30) days from entry of the order disposing of the last motion outstanding. However, if the circuit court neither grants nor denies the motion within thirty (30) days of its filing, the motion shall be

12

deemed denied by operation of law as of the thirtieth day, and the notice of appeal shall be filed within thirty (30) days from that date.

Ark. R. App. P.–Civ. 4(a)–(b)(1) (2019) (emphasis added).

Whitney received Elwyn's notice of appeal on June 14 and filed her cross-appeal on June 27, thirteen days later. Because it was not filed within ten days of her receipt of the notice of appeal, Elwyn argues it was untimely. In civil trial practice, when the period of time allowed is less than fourteen days, intermediate Saturdays, Sundays, and legal holidays are excluded in computation. Ark. R. Civ. P. 6(a) (2019). If this rule applies here, the ten days excluding weekends fell on June 28, and Whitney's notice was timely. The question is whether this rule applies to the filing of a notice of cross-appeal. While we have found no case directly answering this question, our supreme court has long held that "[c]omputation of the time period for securing an appeal is done in accordance with Ark. R. Civ. P. 6." *Whitmer v. Sullivent*, 373 Ark. 327, 330, 284 S.W.3d 6, 9 (2008); *see also Davis v. Davis*, 2016 Ark. 64, at 4, 487 S.W.3d 803, 805. In both cases, the court applied the less-than-fourteen-day rule to posttrial motions that extend the time to file a notice of appeal pursuant to Ark. R. App. P.–Civ. 4(b)(1). We see no reason to distinguish between the computation rules for securing a notice of appeal and for securing a notice of cross- appeal. Accordingly, we deny the motion to dismiss.

## VI. *The Marital Home*

We turn now to the merits of Elwyn's point on appeal and Whitney's point on cross-appeal regarding Whitney's equitable share of Elwyn's home. On appeal, Elwyn argues that the circuit court erred by ordering him to pay Whitney $52,000 for her contribution to his separate nonmarital property. On cross-appeal, Whitney argues that the court erred in not

13

awarding her one-half of the value of the home because, in addition to the funds from the sale of her home, marital funds were used to pay the mortgage in full during the parties' marriage.

Elwyn and Whitney searched for and together found a home on Van Lee Drive several months before they were married. On November 30, 2005, Elwyn purchased the home in his name only and executed a mortgage for the entire purchase price of $360,000. Before the parties married on February 10, 2006, Elwyn made two or three mortgage payments. After their marriage, the parties lived together in the home until Elwyn filed for divorce. Elwyn testified that all the mortgage debt was paid with his earnings, and he paid off the mortgage on May 13, 2011. Whitney testified that in July 2006, she sold her home that she had owned since 1999 and made $52,000 from the sale. She testified that "all" of the $52,000 "went into" the Van Lee Drive home. According to Whitney, the money was used to pay for repairs, furnishings, paint, and debt on the house. Elwyn denied that any of Whitney's money was used on the Van Lee Drive home.

The parties do not dispute that the Van Lee Drive home is Elwyn's separate nonmarital property. Under Arkansas law, nonmarital property "shall be returned to the party who owned it prior to the marriage unless the court shall make some other division that the court deems equitable," taking into consideration certain factors listed in the statute. Ark. Code Ann. § 9–12–315(a)(2) (Repl. 2015). But, relevant to the issue before us, earnings acquired subsequent to marriage are classified as marital property. *Box v. Box*, 312 Ark. 550, 554, 851 S.W.2d 437, 440 (1993); Ark. Code Ann. § 9–12–315(b) (Repl. 2015). And it has long been held that a nonowning spouse is entitled to some benefit by reason of marital

14

funds having been used to pay off debts on the owning spouse's nonmarital property. *Steeland*, 2018 Ark. App. 551, at 8, 562 S.W.3d at 274; *see also Box*, *supra* (holding that the trial court erred in failing to consider that marital property, in the form of marital earnings, was used to pay debt against nonmarital property). As we stated in section I, the circuit court is given broad powers to distribute both marital and nonmarital property to achieve an equitable division, and the overriding purpose of the property-division statute is to enable the court to make a division that is fair and equitable. *Steeland*, 2018 Ark. App. 551, at 8, 562 S.W.3d at 274.

The circuit court found that the Van Lee Drive home was Elwyn's nonmarital property and in its order provided the following:

> The Court FINDS [Whitney] made contributions towards the purchase of the house in the amount of $52,000 for which she shall have a LIEN on the home with interest at the legal rate until paid to her.
>
> . . . .
>
> The Court's finding is based upon the facts adduced at trial and is pursuant to Ark. Code Ann. § 9-12-315(a)(2), that the court shall return property to the party who owned it prior to the marriage unless the court shall make some other division that the court deems equitable taking into consideration the facts in the case.

The court considered the cases that Whitney cites in support of her argument when it made its findings about the Van Lee Drive home. She included those cases, their holdings, and her request for one-half the value of the marital residence in her proposed divorce-decree findings. The law does not require the court to give Whitney a set, mathematically certain amount. A circuit court "may find that a non-owning spouse is entitled to some benefit by reason of marital funds having been used to pay off debts on the owning spouse's non-marital property." *Box*, 312 Ark. at 555, 851 S.W.2d at 440. The fact that marital funds

15

and funds from the sale of Whitney's premarital home were used to pay the debt on Elwyn's separate property was "relevant evidence for the trial court to consider when dividing the parties' marital and non-marital property." *Id.* However, a circuit court has broad powers to distribute both marital and nonmarital property to achieve an equitable division. *Steeland*, 2018 Ark. App. 551, at 8. Moreover, alimony is a complementary device that a court may use to make the dissolution of a marriage financially equitable. *Johnson v. Johnson*, 2018 Ark. App. 308, at 5, 550 S.W.3d 911, 914. In this case, the court ordered an equitable distribution to Whitney of Elwyn's nonmarital business and his nonmarital home. The court also awarded her alimony and specifically stated in making the award that it had considered that Elwyn retained the marital home. We hold that the court's findings on the Van Lee Drive home are not clearly erroneous.

Affirmed on direct appeal; affirmed on cross-appeal.

WHITEAKER and VAUGHT, JJ., agree.

*Hilburn, Calhoon, Harper, Pruniski & Calhoun, Ltd.*, by: *Sam Hilburn* and *Tetiana Fayman*, for appellant.

*Coplin & Hardy, PLLC*, by: *Betty J. Hardy*, for appellee.