Cite as 2025 Ark. App. 438

# ARKANSAS COURT OF APPEALS
DIVISION I
No. CV-24-236

| | | |
|---|---|---|
| KENNETH HEDRICK | | Opinion Delivered September 24, 2025 |
| | APPELLANT | |
| | | APPEAL FROM THE POPE COUNTY CIRCUIT COURT |
| V. | | [NO. 58DR-17-431] |
| | | |
| BOBBYE JOE POPE | | HONORABLE GORDON W. "MACK" |
| | APPELLEE | MCCAIN, JR., JUDGE |
| | | |
| | | AFFIRMED |

**ROBERT J. GLADWIN, Judge**

Kenneth Hedrick appeals from the October 9, 2024 final judgment entered by the Pope County Circuit Court.[1] He argues that the circuit court committed reversible error in awarding certain property to appellee Bobbye Joe Pope as her premarital property and in inequitably awarding marital assets to her. We affirm.

---

[1]Hedrick filed a notice of appeal on October 13. Hedrick also attempts to appeal from the October 26 nunc pro tunc final order entered by the circuit court, which is identical to the October 9 final order except for its title and the fact that it physically attached Pope's posttrial briefs that were referenced in both orders. *See* Ark. R. Civ. P. 10(c) (2025) (adoption by reference). Although the better practice would have been to file an amended notice of appeal that included the October 26, 2023 nunc pro tunc final order, Hedrick did not do so. Regardless of whether the October 13 notice of appeal encompasses the later October 26 nunc pro tunc final order, we reach the merits of Hedrick's appeal because we are able to do so referring only to the October 9 final order, and in this specific instance, the nunc pro tunc order in no way altered the findings of fact and conclusions of law that were already referenced in the prior order.

I. *Facts and Procedural History*

This appeal involves the circuit court's determination and award of the following assets in the dissolution of the parties' marriage:[2] a trucking business, Bayou Ridge Transport, LLC ("BRT") (and all assets titled in the same); a 1995 Freightliner dump truck with a VIN number ending in 911 ("1995 Dump Truck"); a 1997 Mack dump truck ("1997 Dump Truck"); and a Caterpillar dozer with serial number 45V45857 ("Dozer"). The parties were married from October 1, 2016, until August 8, 2017, and had been engaged in a romantic relationship since September 2008.

During the divorce proceedings, Pope argued to the circuit court that Hedrick had transferred all the above-referenced assets to her before their marriage when he was concerned about a lawsuit concerning a former employee, Junior Philpot.

Hedrick has been in the trucking business since 2003, when he originally operated under the name Kenny Hedrick Trucking, an entity that was never incorporated. In 2005, Hedrick and his mother, Marie Hedrick ("Marie"), created BRT for the purpose of engaging in over-the-road trucking. Introduced at trial without objection was a copy of the Arkansas Secretary of State's record showing that in 2005, the number of shares of BRT was two and that Hedrick was the incorporator and owner. Hedrick stated that his daughter, Marita Jo

---

[2]A decree of divorce was entered on April 3, 2023, finding that Hedrick was entitled to a decree of divorce from Pope on the basis of his complaint for divorce filed therein and verbally amended to grounds of eighteen months' separation. The decree provided that it was not a final order, and the parties acknowledged that the circuit court was taking the remaining issues under advisement and would be addressed by separate order.

Volekel ("Marita"), took over Marie's interest and became a one-half owner of BRT when she turned eighteen in 2007. At trial, there was conflicting testimony from multiple witnesses about both the ultimate number of shares of BRT and their ownership.

Multiple witnesses similarly testified that Hedrick had been worried about the Philpot lawsuit, was afraid of being sued, and had told them that he had put everything in Pope's name to protect them because of the lawsuit. The witnesses consisted of employees, family members, and friends of one or both parties. Hedrick acknowledged that his attorney told him he should transfer all assets out of his name but that he needed to have a fair market value for them.

Pope testified that Hedrick had asked her to transfer assets out of his name so he would not lose them in the Philpot lawsuit. She stated that she had never tried to open a business before but attempted to move all assets out of his name, including BRT, at Hedrick's request. She further testified that Marita knew these actions were taking place. Pope testified that she signed a lot of documents at Hedrick's request and that she could not remember all the documents she signed. In addition, she also testified that Hedrick told her he was tired of driving trucks and wanted to drive dump trucks.

After requesting and receiving posttrial briefs from the parties, the circuit court ultimately found that BRT (including all its assets) as well as the 1995 Dump Truck, the 1997 Dump Truck, and the Dozer were Pope's premarital assets, and she was awarded those assets in the divorce. The circuit court announced its ruling via email in which it also stated

that Pope's posttrial briefs would be adopted as findings of fact and conclusions of law. The initial "final order" was entered by the circuit court on October 9, 2024.

Hedrick filed a notice of appeal on October 13, specifically appealing the following:

(A)     The findings of the hearing held on February 7 through February 10, 2023, and any resulting Orders of the same;

(B)     The Final Order entered on October 9, 2023;

(C)     and from all other intermediate orders included in the record of this matter that have now become appealable orders.

. . . .

[T]he entire record in this case up to and through the filing of this Notice of Appeal and any subsequent pleadings filed prior to the time the record is due to the appellate court.

On October 25, Pope's counsel alerted the circuit court and opposing counsel that he was submitting a "Nunc Pro Tunc Final Order" that was identical to the original final order other than the title and the attachment of Pope's posttrial briefs referenced in paragraph 4. The circuit court entered the nunc pro tunc final order on October 26, and no subsequent notice of appeal was filed.

II. *Standard of Review and Applicable Law*

The same standard of review applies to both the division of property and the issues in this case:

Domestic-relations cases are tried de novo on appeal, and the appellate court does not reverse a circuit court's finding unless they are clearly erroneous. A finding is clearly erroneous when, although there is evidence to support it, the reviewing court on the entire evidence is left with a definite and firm conviction that a mistake has been made.

4

Furthermore, a circuit court has broad powers to distribute property in order to achieve an equitable distribution. The overriding purpose of the property-division statute is to enable the court to make a division of property that is fair and equitable under the circumstances. With respect to the division of property in a divorce case, we review the circuit court's findings of fact and affirm them unless they are clearly erroneous or against the preponderance of the evidence. In reviewing a circuit court's findings, we defer to the court's superior position to determine the credibility of witnesses and the weight to be accorded to their testimony. This court acknowledges that the statute does not compel mathematical precision in the distribution of property; it simply requires that marital property be distributed equitably.

*Wilcox v. Wilcox*, 2022 Ark. App. 18, at 4, 640 S.W.3d 408, 411 (citations omitted). The burden is on the party who asserts an interest in the property to establish that it is, in fact, separate property. *Aldridge v. Aldridge*, 28 Ark. App. 175, 177, 773 S.W.2d 103, 104 (1989).

Although Arkansas law presupposes an equal division of marital property, premarital property is to be retained by the owning spouse. Ark. Code Ann. § 9-12-315(b) (Repl. 2020). Arkansas law also provides that a court can make an equitable division even of nonmarital property to achieve the ultimate goal of an equitable dissolution of the marriage:

(2) All other property shall be returned to the party who owned it prior to the marriage unless the court shall make some other division that the court deems equitable taking into consideration those factors enumerated in subdivision (a)(1) of this section, in which event the court must state in writing its basis and reasons for not returning the property to the party who owned it at the time of the marriage.

Ark. Code Ann. § 9-12-315(a)(2). The same statute defines marital property and the established exceptions to marital property. *See* Ark. Code Ann. § 9-12-315(b).

III. *Discussion*

A. Award of Certain Property to Pope as Her Premarital Property

Hedrick argues that Pope failed to prove that certain of his separate premarital

5

property had been transferred to her before their marriage. Under Arkansas law, property acquired before the marriage is not marital property. *Jones v. Jones*, 2014 Ark. 96, at 5, 432 S.W.3d 36, 40. As such, it is excepted from the Arkansas statute that requires that marital property be distributed one-half to each party unless determined to be inequitable. *See* Ark. Code Ann. § 9-12-315(a)(1).

It is undisputed that Hedrick created BRT before he married Pope. The question before us is whether Pope proved that before their marriage, Hedrick transferred ownership of those assets to her. In the final order, the circuit court made identical findings as to the relevant assets in this appeal—that they each constitute Pope's premarital property. The circuit court made these findings by relying on the testimony of Pope's witnesses since it found the credibility of the parties and of Hedrick's witnesses to be lacking.

This court has routinely held that it will defer "to the superior position of the circuit court to determine the credibility of the witnesses and the weight to be accorded their testimony . . . [and] will not overturn the circuit court's credibility determination on appeal." *Teague v. Canfield*, 2014 Ark. App. 712, at 8. A review of the witness testimony on which the circuit court relied follows.

### 1. *BRT*

Bob Kinsey testified that he is Pope's father, and it was his understanding that Pope bought the trucks, and Hedrick performed the contracting jobs. He remembered being at his home when Hedrick and Pope told him that due to a lawsuit, Hedrick had transferred

everything into Pope's name. He also remembered Hedrick buying a truck sometime in 2016 or 2017. Kinsey specifically testified:

> "Oh, yeah. When they come out to the house that day, he said, he told me everything was changed from his name to Bobbye's name so he wouldn't get sued and lose ever'thing. . . . [H]e told me he got ever'thing out of his name and put it in Bobbye Jo's name so he wouldn't, he said he was gonna be sued and he might lose his house and stuff.

J.R. Cross testified that he sold a hopper-bottom truck to Pope, and she paid by check dated June 10, 2017. Although, when he looked at the names on the checks, he was not sure who bought it or to whom it was sold.

Paul Driggers explained that he had done business with Hedrick for ten to fifteen years, having leased a truck from and having been a driver for BRT. He also worked with Pope in signing the lease contracts with BRT. He stated he may have seen signatures on a power of attorney, but he was not sure. Driggers confirmed after the wreck involving Junior Philpot, Hedrick told him "he was going to have to take everything out of his name because of that accident."

Amy Hedrick testified that she was married to Kenny Hedrick's son, Corey, from 2005 to 2014. She explained that she had worked for various companies that Hedrick owned, including BRT, until about 2017. She testified about Philpot's wreck in 2009 and specifically that she discussed it with Hedrick and the "need to get everything out of his name so he wouldn't lose it in the lawsuit." She stated, "At the same time, he told me that he was moving everything into [Pope's] name." She testified she was aware that BRT was transferred to

7

Pope's name and that they talked about getting the companies, the trucks, and everything out of Hedrick's name in late 2011.

Dlynn Boger testified that she worked with Hedrick and Pope and had known Pope for thirty years. She testified Hedrick had asked Pope the following in her presence: "Have you got all that covered and all of it into your name and out'a my name?" Pope responded: "Yes, it's all done." Twice Boger heard Pope say that BRT was Pope's. Around 2014 or 2015, Boger overheard Hedrick tell someone else he would be able to retire because Pope owned the company.

Carl Warren testified that he worked for Pope's company driving trucks, and that company was BRT. He had an agreement with Pope in which he "ran trucks" with her Arkansas Department of Transportation license numbers for about two years.

Terry Smith testified that at one point, Hedrick was anticipating a lawsuit and wanted to transfer everything out of his name in case he was sued. Smith testified that he was listed as an officer and received one share of BRT. He did not pay anything for it but did work for the company. Smith explained that in 2017 or 2018, he was removed from the company ownership so that Hedrick's kids could be added. He believed he lost his ownership share at that time and was never compensated for it. Smith testified that he did not know the percentage ownership of the company his one share would have been and had never seen the paperwork that purported in 2012 to give him a share of BRT. He acknowledged that he never received any income or tax statements from BRT and was not present for any meeting that removed Hedrick as the chairman of the board of directors or president of BRT.

Pope testified that she was transferred 50 percent of the shares of BRT in 2012, and later that same year, she became the full owner. She testified that in May 2013, she owned seventy-five shares but did not know what percentage ownership of BRT that was. Minutes from a 2017 meeting showed that Pope had one hundred shares of BRT. In terms of documentary evidence, the record contains an amendment filing with the Arkansas Secretary of State that indicated Pope had seventy-five shares of BRT in 2013. Hedrick and Marita disputed Pope's claim, arguing that no valid shares had ever been transferred to Pope.

In sum, the testimony that the circuit court found credible regarding BRT—and subsequently its assets—was the testimony that Hedrick considered and ultimately transferred its assets to Pope because of his concerns over the Philpot lawsuit. Hedrick argues that the evidence that Pope offered conflated being an officer of BRT with ownership of the company. It is undisputed that Pope did not begin to work for BRT until 2008, three years after it was created. He notes that while Pope stated she was made owner of BRT and other companies so that Hedrick could avoid liability in the Philpot lawsuit that was brought in 2012, she was never sued in this matter as an owner of BRT, although BRT and Hedrick, among others, were.

Hedrick urges that Pope failed to prove she was legally an owner in 2012, producing neither evidence of the date that she received shares nor the number of shares received. He maintains that there was no consideration exchanged for the alleged transfer of ownership. Accordingly, he urges that ownership of BRT did not change, and even taking as credible

the testimony the circuit court determined to be credible, the evidence does not rise to a preponderance of the evidence that Pope is the owner of BRT.

### 2. *1995 Dump Truck; 1997 Dump Truck; and Dozer*

On April 10, 2014, BRT purchased the 1995 Dump Truck from Dwayne Brown. This was before the parties' marriage. Plaintiff's exhibit 28 is a copy of the two checks to Dwayne Brown totaling $21,000 written on BRT's account. Hedrick submits that without his approval, Pope titled the dump truck in her individual name on or about January 9, 2015, as evidenced by defendant's exhibit 18, which shows a replacement title in her individual name. Defendant's exhibit 18 shows title number 761002393173 titled in Pope's individual name. However, defendant's exhibit 18 clearly shows that the previous title number was 761002226638, which is not in evidence. Hedrick maintains that Pope failed to produce any tracing as evidence to how the 1995 Dump Truck became titled in her individual name. Further, defendant's exhibit 18 does not bear Hedrick's signature anywhere. Hedrick disputes that the 1995 Dump Truck should have ever been titled in Pope's individual name. It should have been titled in the name of BRT, which he maintains is his premarital company.

Hedrick stated that he believed the 1995 Dump Truck was paid for outright with funds from the BRT account without a loan because this is what he had instructed Pope to do. (Pope had signing authority on BRT's checking account.) However, a Petit Jean State Bank loan (loan number 275) was taken out in BRT's name on April 8, 2014, purportedly for the purchase of the 1995 Dump Truck. Pope signed Hedrick's name to the loan as his

10

alleged power of attorney. Hedrick disputes this was a valid power of attorney and disputes she had his authority to obtain the loan. Grant Sperry, a forensic document examiner with almost forty-four years of continuous experience and training, opined that it was not Hedrick's signature on either alleged power of attorney.

Hedrick acknowledges that this was a BRT loan, not an individual loan acquired by Pope. BRT paid off the Petit Jean State Bank loan, and the record shows that the lien was released on March 7, 2017. The 1995 Dump Truck was run under Kenny Hedrick Trucking until K & B Trucking, LLC ("K & B"), was created in 2016, at which time it was insured under K & B. Per the circuit court's 2017 amended temporary order, the 1995 Dump Truck has been in Hedrick's possession since the parties' separation. On August 7, 2018, the 1995 Dump Truck was wrecked by a driver. The insurance company sent the insurance proceeds to Petit Jean State Bank, the lienholder. This is how Hedrick found out about the Petit Jean State Bank loan. At this time, Hedrick discovered that Pope had put up both her truck and his GMC truck as collateral for the loan. Both are now released as collateral.

The circuit court found—and the record before us supports the finding—that the 1995 Dump Truck is titled in the name of BRT. Hedrick discussed this truck in his testimony, stating that BRT purchased the truck from Dwayne Brown in April 2014 for $21,000. It is undisputed that it was wrecked and has been used for parts. Although Hedrick objects to this truck being titled in Pope's name because it belongs to BRT and claims that BRT is his premarital property, the circuit court specifically rejected that argument. Hedrick asks this

11

court to specifically reweigh the facts and credibility determinations of the circuit court, and we decline to do so.

Hedrick also testified that the 1997 Dump Truck was purchased from insurance proceeds from the salvage of a 1995 Dump Truck that was purchased by BRT in 2016 before the parties' marriage. Hedrick submits that BRT purchased the Dozer before his marriage to Pope and should be considered an asset of BRT.

Because the circuit court determined that BRT's assets are Pope's premarital property, Hedrick has failed to show how the circuit court erred in specifically awarding the 1997 Dump Truck or the Dozer to Pope. Again, we will not reweigh the factual and credibility determinations of the circuit court. We hold that the circuit court's findings are well supported by the evidence and that Hedrick has failed to prove an abuse of discretion. Accordingly, we affirm the award of the three vehicles addressed in this appeal to Pope.

B. Inequitable Award of Assets to Pope

Hedrick argues in the alternative that, even if the circuit court was correct in finding BRT's assets to be Pope's separate property, the circuit court did not consider the "sweat equity" he invested in the businesses prior to and during the marriage. Moreover, he maintains that the circuit court did not consider that marital funds were used to increase the equity of the assets.

Because we hold that the evidence before us supports the circuit court's division of the assets relevant to this appeal, we need not address Hedrick's alternative analysis. That said, the circuit court's job is to review the conflicting evidence and make a determination,

12

which it did. The circuit court credited Pope's witnesses' testimony and discredited Hedrick's. On our de novo review on appeal, we will not reverse a circuit court's findings unless they are clearly erroneous, *see Wilcox*, *supra*, and Hedrick has failed to prove how the circuit court's decision is clearly erroneous.

We disagree with Hedrick's argument that "all assets" were awarded to Pope. Our de novo review of the record reveals that Hedrick retained his home, his shed, and his shop and all its contents unencumbered by any debt. Hedrick was also awarded two trucks, a car, a motorcycle, a boat, a backhoe, a tractor, two trailers, lawnmowers, a burial plot, and a term life insurance policy. Hedrick was also awarded one-half of the sale proceeds from a 1989 Freightliner dump truck.

In its order, the circuit court specifically stated, "The Court finds that [Hedrick] was determined to move all assets of [BRT], and transfer ownership of [BRT] to [Pope]." This conclusion is supported by the findings of fact adopted and incorporated into the decree from Pope's posttrial briefs. Multiple witnesses consistently testified about Hedrick's efforts to assets "out of his name" due to liability concerns resulting from the Philpot lawsuit. When viewed together, this evidence defeats any claim Hedrick attempts to show otherwise. Accordingly, we affirm.

Affirmed.

BARRETT and BROWN, JJ., agree.

*Lisa-Marie Norris*, for appellant.

*Tim Cullen*, for appellee.

13